107 T.C. No. 1


UNITED STATES TAX COURT


LUCKY STORES, INC., AND SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4446-93.                      Filed August 6, 1996.

        P made contractually required monthly
contributions to 29 collectively bargained defined
benefit pension plans.  For its fiscal year ended
February 2, 1986, P obtained an extension of the time
within which to file its Federal income tax return to
October 15, 1986.  On its return P deducted, in
addition to the 12 monthly contributions based on
employee hours worked during the fiscal year, monthly
contributions based on hours worked during months
intervening between the last day of the fiscal year and
the extended due date of the return. Held:  the
contributions based on hours worked after the close of
the fiscal year and before October 15, 1986, were not
on account of P's February 2, 1986 fiscal year, as
required by sec. 404(a)(6), I.R.C., and are therefore
not deductible in that year.

Barry W. Homer, Eric W. Jorgensen, and Grady M. Bolding, for petitioner.

Alan Summers, Kevin G. Croke, and Elizabeth L. Groenewegen, for respondent.

NIMS, Judge:  Respondent determined the following deficiencies in petitioner's Federal income tax:

| Fiscal year ended (FYE) | Deficiency |
| --- | --- |
| January 30, 1983 | $8,797,328 |
| February 3, 1985 | 2,175,135 |
| February 2, 1986 | 48,255,017 |

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case involves a number of issues.  The only issue to be resolved in the present proceeding is petitioner's claim to a deduction for union negotiated pension plan contributions for the taxable year ended February 2, 1986.  The amount of the disputed deduction is $36,661,529.

Most of the facts have been stipulated and are so found.

Petitioner is a Delaware corporation.  At the time the petition was filed, petitioner's principal place of business was located in Dublin, California.

FINDINGS OF FACT

At all relevant times, petitioner was subject to SEC public financial reporting and other requirements and, along with its subsidiaries, operated retail grocery stores located throughout California and Nevada. Petitioner requested and received from the Internal Revenue Service an extension to October 15, 1986 within which to file its United States consolidated corporate income tax return for the fiscal year ended February 2, 1986 (the Current Taxable Year). The return was timely filed.

Under applicable Internal Revenue Code provisions, employers are permitted to enter into "qualified" deferred compensation arrangements to provide retirement and other benefits to employees and their beneficiaries through single employer plans, multiple employer plans, and multiemployer plans. Plans that are not established or maintained pursuant to collective bargaining agreements are herein for convenience referred to as Multiple Employer Plans. Plans that are established and maintained pursuant to collective bargaining agreements are herein for convenience referred to as CBA Plans, or, on occasion, as "multiemployer pension plans". In both Multiple Employer Plans and CBA Plans, the contributions of the participating employers are pooled and used to provide the benefits of all the covered employees, former employees, and their beneficiaries. Section 413(b) contains certain rules exclusively applicable to CBA

Plans.  Section 413(c) contains certain rules applicable to Multiple Employer Plans.  The plans involved in this case are CBA Plans, subject to section 413(b).

At all relevant times, petitioner was required to and did contribute money to 29 CBA Plans.  These plans were defined benefit pension plans.  The following schedule sets forth the six largest of the CBA Plans to which petitioner made contributions (the Six Large CBA Plans) and their annual accounting periods (Plan Years) for Federal tax purposes:

| CBA Plan | Plan Year |
|---|---|
| Northern California Retail Clerks Union and Food Employers Joint Pension Plan | January 1 – December 31 |
| California Butchers Pension Trust Fund | July 1 – June 30 |
| UFCW Midwest Pension Fund | December 1 – November 30 |
| Western Conference of Teamsters | January 1 – December 31 |
| Central States SESW | January 1 – December 31 |

Southern California UFCW                          April 1 -
                                                 March 31

Contributions to each CBA Plan that were attributable to covered hours or weeks worked in a given month were due on the 20th of the month following the month in which the hours were worked or compensated for.  (The parties stipulated that contributions were due on the 30th of each month, but in her testimony Sandra Turpen, the administrator of the Northern California Retail Clerks' Employer Benefit Fund, gave the more precise statement of the due date for contributions.)  An account was considered delinquent if the payment was not received by the last day of the month.

During the calendar years 1985, 1986, and 1987, more than one thousand employers made contributions to the CBA Plans on behalf of thousands of unionized employees and their beneficiaries.  At all times between January 1, 1985 and December 31, 1987 (the relevant period), each of the CBA Plans qualified as a multiemployer pension plan within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA) and was a plan to which section 413(b) and Subtitle E of Title IV of ERISA applied.  At all times during the relevant period, each of the CBA Plans was qualified under section 401(a) as a pension plan and, accordingly, the trusts related to each CBA Plan were exempt from taxation under section 501.

As of the end of each month, petitioner calculated the amount that it was required to contribute to each CBA Plan attributable to covered hours or weeks worked during such month. Petitioner multiplied the number of hours or weeks of work in such month by covered employees times a monetary rate set by the collective bargaining agreement. Increases or decreases in the number of covered employees along with increases or decreases in the hours or weeks worked by covered employees required petitioner (and each of the other contributing employers) to make a separate calculation for its required contribution to each Plan month by month.

For all taxable years ending before the Current Taxable Year, petitioner computed its deduction for contributions to the CBA Plans in the following manner: for each CBA Plan petitioner added the 12 monthly contribution amounts attributable to covered hours or weeks worked during a given taxable year and claimed that total amount as a deduction for that year. For every taxable year ending before the Current Taxable Year, the total amount claimed as a deduction for a taxable year did not include any contributions attributable to hours or weeks worked after the end of such year.

For its Current Taxable Year, petitioner computed its deduction for contributions to the CBA Plans claimed on its return in the following manner: petitioner added together the 12

monthly contribution amounts attributable to covered hours or weeks worked between February 3, 1985 and February 2, 1986, and also added the 8 monthly contributions attributable to covered hours or weeks worked from February 3, 1986 through August 31, 1986 and made before October 15, 1986 (the date on which petitioner filed its return for the Current Taxable Year). In addition, as to certain of the CBA Plans and bargaining units, the dates were February 3, 1986 through September 30, 1986, in which case there were nine monthly contributions instead of eight. Thus petitioner claimed a deduction for 19--in some cases 20--monthly contributions on the Current Taxable Year return.

For fiscal years ending after February 2, 1986, petitioner did not deduct any amounts which had been previously deducted on its Federal income tax return for any prior year. For fiscal years ending after February 2, 1986, petitioner claimed a deduction for no more than 12 monthly contributions in any such fiscal year. The record does not disclose the number of monthly contributions claimed by petitioner for deduction purposes on its Federal income tax return for the taxable year next succeeding the Current Taxable Year.

The $36,661,529 in dispute consists of $31,427,131 of contributions to the Six Large CBA Plans, and $5,234,398 to the 19 smaller plans. In the notice of deficiency, respondent did not disallow the 12 monthly contributions totaling $57,139,406

that petitioner made to the CBA Plans for hours or weeks worked by its covered employees in the Current Taxable Year and deducted on petitioner's return for the Current Taxable Year. The $57,139,406 consists of $48,395,987 of contributions to the Six Large CBA Plans and $8,743,419 to the 19 smaller plans. In addition, out of the total $96,890,058 deduction claimed by petitioner in the Current Taxable Year, respondent did not disallow $3,089,123 of contributions to certain profit-sharing plans.

Petitioner has never filed Form 3115 (Application for Change in Accounting Method) concerning the method it used to arrive at its deduction for contributions to the CBA Plans claimed on its return for the Current Taxable Year.

The administrator of each CBA Plan was a party independent of petitioner. The administrator of each CBA Plan was appointed by the Board of Trustees of the Plan, one-half of whom are selected by the employers and the other one-half of whom are selected by the union locals. Under the terms of the collective bargaining agreements, the CBA Plans were entitled to collect interest and/or late fees on delinquent contributions from employers. At all times during the relevant periods, each CBA Plan administrator had in place procedures to monitor the actual dates of receipt of each contributing employer's required contribution.

As required by ERISA sections 104 and 4065 and sections 6057(b) and 6058(a), after the close of each plan year the administrator of each CBA Plan filed Annual Reports (Forms 5500) and accompanying schedules with the IRS. On Schedule B of Form 5500, each CBA Plan reported for each plan year only those contributions paid under the applicable collective bargaining agreement for hours or weeks worked during that particular plan year. Petitioner's monthly contributions to each CBA Plan were reported by each CBA Plan on Schedule B of Form 5500 for that plan year in which the related hours or weeks of the covered employees had been worked. Schedule B of Form 5500 is required to be filed only with respect to a defined benefit plan that is subject to the minimum funding standards of section 412 and ERISA section 302, 88 Stat. 869, and one purpose of the completion of the Schedule B is to demonstrate compliance or noncompliance with such minimum funding standards.

There was no provision in any of the collective bargaining agreements prohibiting petitioner from contributing more than the amount required under the agreements or contributing amounts in advance of the date that such amounts became due. There was no provision in any of the collective bargaining agreements which explained how the plan administrator was supposed to handle or credit an amount received from an employer that was not earmarked as a contribution then due under the collective bargaining

agreement.  However, no contributions were made by petitioner to any of the CBA Plans during the relevant period that were not required by any relevant collective bargaining agreement. Petitioner, for public financial reporting purposes, accounted for its monthly contributions to the CBA Plans attributable to hours and weeks worked between February 3 and September 30, 1986 in its financial statements for its fiscal year immediately succeeding its fiscal year ended February 2, 1986.

The taxable year of a contributing employer need not be the same as the plan year of a CBA defined benefit pension plan to which such employer contributes.  Administrators of CBA Plans are not required to know the taxable year adopted by contributing employers.  Under the terms of the collective bargaining agreements, petitioner was not required to report to the plan administrators the deduction amounts it claimed for contributions.

At all times during the relevant periods, each of the CBA Plans met the minimum funding requirement of section 412 and ERISA section 302.  In preparing its funding standard account under section 412 for each plan year, no CBA Plan actuary took into account contributions made by the contributing employers for hours worked by covered employees following such plan year. Under each of the CBA Plans for all relevant periods, the earning, crediting, and vesting of a participant's benefit by the

CBA Plan was independent of the making of any specific contribution by an employer.

The information recorded on Form 5500, Schedule B, for each of the Six Large Plans shows that each of the Six Large Plans had unfunded past service costs and that the actual contributions during the plan year, together with the credit balance in the funding standard account, exceeded the minimum funding requirement for the plan year.  Therefore, section 404(a)(1)(A)(iii) was used to calculate the alternative limit for purposes of determining petitioner's entitlement to deduct its contributions to the CBA Plans.

For purposes of section 413(b)(7), the applicable limitation of section 404(a)(1)(A)(iii) with respect to contributions to each of the Six Large CBA Plans for the plan year of such CBA Plan that includes the date February 2, 1986, determined on a plan year basis and as if all participants were employed by a single employer, was as follows:

Plan Year Ended In Tax Year

|  | Deductible Limit | Contributions* |
|---|---|---|
| California Butchers | $34,200,292 | $23,905,300 |
| N. Cal. Retail Clerks | 92,985,762 | 78,946,374 |
| S. Cal. UFCW | 103,283,669 | 85,955,898 |
| Central States SESW | 957,945,930 | 664,202,000 |
| UFCW M W Pension Plan | 21,780,509 | 20,642,880 |
| Western Conf./Teamsters | 567,476,801 | 478,491,232 |

Plan Year Begun In Tax Year

|  | Deductible Limit | Contributions* |
|---|---|---|
| California Butchers | $31,210,926 | $23,026,000 |
| N. Cal. Retail Clerks | 85,567,809 | 84,810,863 |
| S. Cal. UFCW | 103,071,886 | 92,593,714 |
| Central States SESW | 909,812,563 | 725,079,000 |
| UFCW M W Pension Plan | 22,500,268 | 21,053,791 |
| Western Conf./Teamsters | 647,156,505 | 500,960,586 |

*Actual contributions during the plan year as recorded on the Form 5500, Schedule B.

The amount of total employer contributions actually paid to each of the CBA Plans based on hours and weeks worked by eligible employees during each relevant plan year, as reported on Schedule B for such plan year, is an amount which, as of the beginning of such plan year, the CBA Plan administrator of such CBA Plan could have reasonably estimated or expected to be made by employers with respect to hours and weeks worked by covered employees during such plan year.

Petitioner was never notified by any CBA Plan administrator or other CBA Plan representative that the statutory deduction limit was exceeded with respect to any CBA Plan for any relevant period. Petitioner did not notify any CBA Plan administrator or other CBA Plan representative that the monthly contributions attributable to hours and weeks worked after February 2, 1986

were to be applied to months ending on or before February 2, 1986.

For purposes of paying benefits and plan expenses, all contributions to each CBA Plan are pooled and no distinction is made between contributions for any specific time period or contributions made by any particular employer.

Petitioner consulted with the firm of Price Waterhouse regarding the acceleration of deductions for post-tax yearend contributions to collectively bargained defined benefit pension plans. The parties stipulated that during the relevant period, Price Waterhouse was engaged in marketing that type of acceleration to certain clients and other employers that were making required contributions to multiemployer defined benefit pension plans.

By section 601(a) and (b)(1) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2249, the top corporate tax rate was reduced from 46 percent to 34 percent for tax years beginning on or after July 1, 1987. See S. Rept. 99-313, (1986) 1986-3 C.B. (Vol. 3), 219, 220-221; H. Conf. Rept. 99-841 (Vol. 2), at II-59 (1986). Income in taxable years that included July 1, 1987 (other than as the first day of such year) was subject to blended rates. Id.

OPINION

During the relevant period, petitioner made monthly contributions to 29 CBA Plans on behalf of its unionized employees.  For each CBA Plan, the amount of the monthly contribution was the arithmetical result obtained by multiplying the "covered hours worked" (the number of hours worked during the month by employees covered under the respective collective bargaining agreement (CBA)) by the "contribution rate", a dollar amount set forth in the CBA.

For any given taxable year prior to the Current Taxable Year, petitioner deducted the 12 monthly contributions that were calculated from covered hours worked during such year.  Then, as to the Current Taxable Year, petitioner changed its method of calculating its deduction.  For the Current Taxable Year, petitioner obtained an extension to October 15, 1986, of the time within which to file its return.  Between the date on which the Current Taxable Year ended and the due date of the return, as extended, petitioner made eight or in some cases nine monthly contributions to the CBA Plans, and claimed these post-yearend contributions (herein for convenience called "grace period contributions") as a deduction for the Current Taxable Year, in addition to the usual 12 monthly contributions.  As to the

Current Taxable Year, respondent denied the deduction for the grace period contributions.

Petitioner claims that it is entitled to deduct the grace period contributions currently because they were "on account of" its Current Taxable Year within the meaning of section 404(a)(6), as explicated by Rev. Rul. 76-28, 1976-1 C.B. 106.  In an unexpected burst of candor, petitioner admits that it is attempting to deduct, for the Current Taxable Year, "contributions made over a 20-month period".

While section 404(a)(1)(A) states that pension plan contributions are deductible "In the taxable year when paid", section 404(a)(6) provides a grace period in that, in the words of the section, "a taxpayer shall be deemed to have made a payment on the last day of the preceding taxable year if the payment is on account of such taxable year", subject to the further condition that the payment be made "not later than the time prescribed by law for filing the return for such taxable year (including extensions thereof)."

Petitioner also argues that under section 413(b)(7) its contributions were within the deductible limits of section 404(a) because the "anticipated contributions" for all the CBA Plans for their respective plan years did not exceed any maximum deduction

limitation under section 404(a).  Moreover, petitioner argues that the grace period contributions were "for the portion of" the Current Taxable Year that ended within the various plan years of the CBA Plans to which it made contributions, because under section 404(a)(6) they were deemed to have been a payment made on the last day of the Current Taxable Year.

Respondent presents several alternative arguments.  First, respondent contends that petitioner's longstanding practice of deducting only contributions calculated from covered hours worked during a given taxable year constituted an accounting method.  In order to change to a different accounting method, petitioner was required under section 446(e) to obtain the Commissioner's consent, which was not done.  Second, respondent asserts that petitioner's "new method", i.e., that of deducting grace period contributions in the Current Taxable Year, fails to clearly reflect income under section 446(b).  And, third, respondent claims that the grace period contributions were not "on account of" petitioner's current tax year within the meaning of section 404(a)(6).

Section 404(a) specifies that employer contributions to exempt trusts under various types of qualified employee benefit plans are not deductible under any other Code provision, but if

they would otherwise be deductible, they are deductible under section 404, subject to articulated limitations as to the amount deductible in any taxable year. The limitations on the amount deductible are contained in section 404(a)(1)(A), which also refers to the deduction of contributions "In the taxable year when paid". While section 404(a)(1)(A) provides the limits on the amount that may be deducted, it does not specify the method by which the actual amount of the deduction may be determined.

The applicable limitations on contributions to the CBA Plans in this case are contained in clauses (i) and (iii) of section 404(a)(1)(A), which, in combination, provide that the overall limitation is the greater of the amount necessary to satisfy the minimum funding standard of section 412(a) for plan years ending within the employer's taxable year, and an amount equal to the normal cost of the plan, augmented by any amount necessary to amortize unfunded costs equally over 10 years.

In addition, the flush language at the end of subparagraph (A) of the foregoing section provides, among other things, that the maximum amount deductible for the taxable year is to be an amount equal to the full funding limitation for such year determined under section 412.

Section 404(a)(6) expands somewhat the time of payment provision at the beginning of section 404(a)(1)(A) by providing:

> (6) Time when contributions deemed made.--For purposes of paragraphs (1), (2), and (3), a taxpayer shall be deemed to have made a payment on the last day of the preceding taxable year if the payment is on account of such taxable year and is made not later than the time prescribed by law for filing the return for such taxable year (including extensions thereof).

As a further refinement of the section 404(a) limitations on the deductibility of contributions, section 413 provides certain rules that apply exclusively to "collectively bargained plans, etc." Section 413(a) provides that subsection (b) applies to any plan (and any trust thereunder) maintained pursuant to a CBA; i.e., a CBA Plan. Various paragraphs of subsection (b) provide rules that relate to CBA Plans, but the relevant paragraph for our present purposes is paragraph (7), which furnishes a road map for applying section 404(a) limitations insofar as they relate to CBA Plans. Section 413(b)(7) provides:

> (7) Deduction limitations.--Each applicable limitation provided by section 404(a) shall be determined as if all participants in the plan were employed by a single employer. The amounts contributed to or under the plan by each employer who is a party to the agreement, for the portion of his taxable year which is included within such a plan year, shall be considered not to exceed such a limitation if the anticipated employer contributions for such plan year (determined in a manner consistent with the manner in which actual employer contributions for such plan year are determined) do not exceed such limitation. If such

anticipated contributions exceed such a limitation, the portion of each such employer's contributions which is not deductible under section 404 shall be determined in accordance with regulations prescribed by the Secretary.

We think petitioner's attempt to use the expanded time of payment provision of section 404(a)(6), as augmented by section 413(b)(7), to enlarge its current contribution deduction is misguided.

The legislative history explains that the purpose of amending section 404(a)(6) was simply to place cash basis taxpayers on the same footing as accrual basis taxpayers insofar as contributions actually paid into the trust after the close of the taxable year are concerned. Before the amendment, only contributions by accrual basis taxpayers made by the time for filing tax returns could be treated as paid in the year for which a return was due. This allowed taxpayers sufficient time after the close of the taxable year to determine the amount of their contributions to be made to the plan. Section 404(a)(6) extends this flexibility to cash basis taxpayers. H. Rept. 93-807 (1974) 1974-3 C.B. (Supp.) 236, 336.

In addition, the conference report states that the intent of permitting grace period contributions is so that they may relate back to the plan year "for purposes of the minimum funding

standards".  H. Conf. Rept. 93-1280, at 290 (1974) 1974-3 C.B. 415, 451.  There is nothing in the legislative history to suggest that Congress intended to expand the treatment of post-yearend payments beyond extending parity to cash basis taxpayers and making necessary calculations to determine the amount of the contribution.

Petitioner has the burden of proof in establishing that the contributions it seeks to deduct are, in the words of section 404(a)(6), "on account of" the Current Taxable Year.  Rule 142(a).  In attempting to do this, petitioner places heavy emphasis upon words contained in Rev. Rul. 76-28, 1976-1 C.B. 106.  Rev. Rul. 76-28, 1976-1 C.B. at 107, states that it "provides rules with respect to the application of section 404(a)(6) * * * in those areas where the Service has determined that guidelines are necessary pending the issuance of regulations."  (We note that as of the date of this Opinion, some 20 years later, regulations have still not been forthcoming.) Rev. Rul. 76-28 holds that

> a payment made after the close of an employer's taxable year
> to which amended section 404(a)(6) applies shall be
> considered to be on account of the preceding taxable year if
> (a) the payment is treated by the plan in the same manner
> that the plan would treat a payment actually received on the
> last day of such preceding taxable year of the employer, and
> (b) either of the following conditions is satisfied.

(1)  The employer designates the payment in writing to the plan administrator or trustee as a payment on account of the employer's preceding taxable year, or

(2)  The employer claims such payment as a deduction on his tax return for such preceding taxable year (or, in the case of a contribution by a partnership on behalf of a partner, the contribution is shown on schedule K of the partnership tax return for such year).  [1976-1 C.B. at 107.]

Revenue rulings are not ordinarily precedential in this Court.  Gordon v. Commissioner, 88 T.C. 630, 635 (1987).  We need not dwell on the question of the weight to be afforded Rev. Rul. 76-28 in this case, however (see Estate of Lang v. Commissioner, 64 T.C. 404, 407 (1975), affd. in part and revd. in part on an unrelated issue 613 F.2d 770 (9th Cir. 1980)), because we believe that in any case petitioner has failed to prove that the payments in question were treated in the same manner that the CBA Plans would treat a payment actually received on the last day of the current taxable year.

Section 413(b)(7) prescribes the method for determining the parameters of the deduction limitations in the case of CBA Plans. Section 413(b)(7) provides that each applicable section 404(a) limitation is to be determined as if all participants in the plan are employed by a single employer.  The amount contributed by each employer under a CBA Plan will not exceed the maximum deduction limitation if the anticipated employee contributions

for the plan year are no greater than the limitation. H. Rept. 93-807, at 101, 1974-3 C.B. (Supp.) at 336. Under section 413(b)(7), the anticipated employer contributions for a plan year are to be determined in a manner consistent with the manner in which _actual_ employer contributions are determined.

We would repeat at this juncture that although sections 404(a)(1)(A) and 413(b)(7) establish outside limits on the amount that may be deducted in a given taxable year, these sections do not determine the amount of the deduction. Nevertheless, we think sections 404(a)(1)(A) and 413(b)(7) establish the approach to be taken to determine the amount of the actual deduction for contributions to CBA Plans.

In a case such as this, where a number of employers are contributing to any given plan--and here 29 different CBA Plans with differing plan years are involved--the computation of any contributing employer's total contribution deduction for a taxable year is obviously a very complex operation. But it stands to reason that the _anticipated_ contributions from each employer must be based upon a 12-month year, and the subsequent contributions, and the consequent deductions, in order to be consistent as required by section 413(b)(7) must likewise be based upon a 12-month year. A taxpayer-employer such as

petitioner may not unilaterally expand its deduction limitation, and increase the amount of its deduction, simply by including contributions in amounts that are inconsistent with anticipated employer contributions.

Furthermore, petitioner has not shown that its deduction as enhanced by the post-yearend contribution falls within the plan limits stipulated by the parties and reflected in our findings of fact. (The parties stipulated that actual contributions during the plan year as recorded on Forms 5500, Schedule B, filed by the Six Large Plan Administrators, fall within the deductible limits.) Petitioner merely argues that the plan's computation of anticipated employer contributions is not concerned with the amount of the employer's deduction. But section 413(b)(7) requires that the computation of anticipated employer contributions must be consistent with actual employer contributions, and we believe that if such consistency is achieved, as in this case, then the actual contributions--those based on hours worked in the taxable year--determine the amount of the deduction.

Sandra Turpen, the Plan Administrator for the Northern California Retail Clerks' Employer Benefit Fund, testified that the minimum funding standard for the fund is calculated on a

calendar year basis, by actuaries who base their calculations upon data furnished by the Fund. The Fund bills each employer on the first of each month, indicating the contribution rate applicable to that employer, and the employer in turn provides the Fund with a list of employees and hours worked, calculates the per hour rate times the hours worked, and makes its monthly contribution accordingly. As stated earlier, payments are due on the 20th of the month, and are deemed delinquent if not received by the end of the month.

Petitioner's Current Taxable Year ended February 2, 1986. It seems obvious that, except for delinquent payments on account of a preceding month in the taxable year, the only grace period contribution in this case that would be treated by the Northern California Retail Clerks' Employer Benefit Fund in the same manner that the Plan would treat a payment actually received on February 2, 1986, would be the payment for hours worked in January, 1986, and which was due February 20, 1986. All monthly payments thereafter would be treated by the Plan as being related to hours worked in a tax year subsequent to the Current Taxable Year.

Petitioner complains that the administrative procedures of the Northern California Retail Clerks' Employer Benefit Fund, as

described by Sandra Turpen, are not necessarily representative of the procedures of any other plan, and may not therefore be relied upon as the basis for finding facts except as to the Plan for which Ms. Turpen was the administrator. We find this argument disingenuous. Petitioner and respondent stipulated Ms. Turpen's deposition as a joint exhibit in lieu of testimony by Ms. Turpen at trial, without any reservation as to its use, or inferences to be drawn from it, whatsoever. Petitioner's purpose in stipulating the deposition is not apparent, if the testimony is not stipulated for the purpose of exemplifying the administrative procedures of all of the CBA Plans involved in this case. If petitioner considers the administration of Ms. Turpen's plan to be atypical, petitioner was free to introduce evidence as to how the other plans were administered, which petitioner chose not to do. We therefore reject petitioner's complaint about scope of the testimony.

Petitioner argues that respondent's position is inconsistent not only with Rev. Rul. 76-28, supra, but also with the administrative position taken in Technical Advice Memorandum 8210014 (TAM) and in a series of private letter rulings. Respondent points out that section 6110(j)(3) prohibits using or citing a written determination as a precedent, unless regulations

provide otherwise, which is not the case here. See <u>Estate of Jalkut v. Commissioner</u>, 96 T.C. 675, 684 (1991). Nevertheless, since the TAM appears to be the wellspring of petitioner's enhanced deduction claim, we deem it necessary to discuss it.

The TAM purports to apply Rev. Rul. 76-28 as it relates to section 404(a)(6) grace period contributions in defined contributions plan cases. As previously noted, Rev. Rul. 76-28 contains several tests (including one insignificant alternative) for determining whether grace period contributions may be deemed to have been made on the last day of the preceding taxable year. One of the tests, easily met, is that the employer must claim the contribution as a deduction on its tax return for the preceding taxable year.

The second test is that the plan must treat the contributions in the same manner as payments actually received on the last day of the preceding taxable year. The TAM nullifies this, the only really significant requirement of Rev. Rul. 76-28, by holding that since there is no specific linkage between contributions and benefits in a defined benefit plan, the requirement that the plan treat the contributions in the same manner as it would a contribution actually received on the last day of the preceding taxable year, is "meaningless".

Having thus seemingly emasculated Rev. Rul. 76-28 as it might otherwise apply to a vast number of employee benefit plans if the TAM were applied across the board, the TAM concludes, however, by saying that "This ruling does not consider the actual amounts deductible for the * * * [relevant] taxable year." Petitioner does not mention this pronouncement.

Rev. Rul. 76-28 provides that a grace period contribution is to be considered "on account of" (the words of section 404(a)(6)) the preceding taxable year if the contribution is treated by the plan in the same manner that the plan would treat a payment actually received on the last day of such preceding taxable year. The TAM states that "A contribution generally does not have any effect on the actual benefits payable to an employee." Petitioner argues that all contributions to each CBA Plan in this case were commingled with all other employers' contributions in a single undifferentiated pool and used to pay plan benefits and expenses without distinction as to when or by whom any contribution was made. Thus, reasons petitioner, it follows that any grace period contribution is treated by the plan in the same manner as the plan would treat a "last day" contribution.

We are not convinced that the absence of a contribution-benefit linkage establishes "same treatment", nor that the same

treatment standard created by Rev. Rul. 76-28 is the only standard by which to measure the requirement of section 404(a)(6) that grace period contributions be "on account of" the relevant taxable year.  We are, convinced, however, that petitioner may not arbitrarily expand the deductible limit for any taxable year by the simple expedient of including, in the taxable year's deduction, contributions based entirely upon hours worked by the plans's participants in a subsequent year.

Petitioner argues that respondent cannot change her longstanding administrative practice and apply the change on a retroactive basis.  Respondent replies that the five private letter rulings, and possibly the TAM, relied on by petitioner relate to single employer, not multiemployer pension plans.  In the former case, the single employer has flexibility in deciding how much and when to contribute, since there are no contractual provisions requiring the single employer to contribute pursuant to a formula at regular intervals.  Petitioner's contributions, on the other hand, are, by contract, mechanical and predictable. Whether the private letter rulings, plus the TAM and Rev. Rul. 76-28, rise to the level of "longstanding administrative practice" is, to say the least, problematical, but in any event, as the Supreme Court has stated in Dixon v. United States, 381

U.S. 68, 73 (1965), Congress, and not the Commissioner, prescribes the tax laws, so that if indeed Rev. Rul. 76-28 and its ruling letter progeny are inconsistent with the thrust of section 404(a)(6), they must give way to the statute.  See also Chevron, U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 842-843 (1984).

We have considered petitioner's remaining arguments, which are basically variations on a theme, and find them equally unpersuasive.

We hold that petitioner's grace period contributions, except those that relate to hours worked in January, 1986, are not on account of petitioner's taxable year ended February 2, 1986, as required by section 404(a)(6), and are therefore not deductible in that year.

To reflect the foregoing and issues previously resolved,

Decision will be entered

under Rule 155.