## LUCKY STORES, INC. AND SUBSIDIARIES, Petitioner–Appellant,

v.

## COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 97–70810.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 1998.

Decided Aug. 20, 1998.

Paul J. Sax, Orrick, Herrington, & Sutcliffe, L.L.P., San Francisco, California, for petitioner-appellant.

Steven W. Parks, United States Department of Justice, Tax Division, Washington, DC, for respondent-appellee.

---

of service performed by those employees during each month.

Before: CANBY, and REINHARDT, Circuit Judges, and RESTANI,[1] Judge, United States Court of International Trade

CANBY, Circuit Judge

This case requires us to interpret 26 U.S.C. § 404(a)(6), which concerns the timing of income tax deductions for contributions paid to multi-employer defined-benefit pension plans. Lucky Stores, Inc. ("Lucky") appeals the judgment of the Tax Court upholding the Commissioner's assessment of tax deficiencies. The Tax Court sustained the deficiencies because it concluded that Lucky had improperly deducted contributions to several defined-benefit pension plans that were paid after the end of the taxable year. *Lucky Stores, Inc. v. CIR,* 107 T.C. 1, 1996 WL 441339 (1996), *supplemented on denial of reconsideration,* T.C. Memo.1997–70, 1997 WL 51211 (1997). We review de novo the Tax Court's conclusions of law, and review for clear error its factual findings. *See Condor Int'l, Inc. v. CIR,* 78 F.3d 1355, 1358 (9th Cir.1996). We affirm the decision of the Tax Court.[2]

## I

Pursuant to various collective bargaining agreements, Lucky paid monthly contributions to several qualified multi-employer defined-benefit pension plans ("CBA plans") on behalf of its unionized employees. CBA plan administrators pooled contributions from the participating employers into a single fund to provide benefits for covered employees, former employees, and their beneficiaries. The amount of Lucky's required contributions varied from month to month, depending on fluctuations in the number of Lucky's covered employees and the total hours or weeks

## II

In general, employers may deduct contributions to qualified pension plans in the taxable year during which the contribution is actually paid, regardless of whether the employer uses an accrual or a cash-basis method of accounting. *See* 26 U.S.C. § 404(a)(1); 26 C.F.R. § 1.404(a)–1(c). An exception to this rule provides that:

> a taxpayer shall be deemed to have made a payment on the last day of the preceding taxable year if the payment is on account of such taxable year and is made not later than the time prescribed by law for filing the return for such taxable year (including extensions thereof).

26 U.S.C. § 404(a)(6).

Prior to 1986, Lucky deducted a total of twelve monthly contributions attributable to employee service during a particular taxable year from its taxable income for that same year. The twelfth payment was made after the end of the taxable year, but was attributed to the previous year as a payment "on account of" that year pursuant to § 404(a)(6). Then, for its taxable year ending on February 2, 1986, Lucky changed its practice. Lucky obtained an extension of time and filed its timely return on or about October 15, 1986. On that return, it attributed to the taxable year ending February 2, 1986, not only the monthly payments made later in February to the various CBA plans, but also the payments made each month thereafter up to October 1986. It did so on its claim that it was making these payments "on account of" the prior taxable year. Lucky thus sought to achieve a one-time benefit of the additional deductions of seven or eight months, added to the usual twelve.[3] The extra deductions totaled $36,661,529. It is

---

1. The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

2. This case was argued along with *Airborne Freight Corp. v. United States,* 153 F.3d 967 (9th Cir.1998), which presents the identical issue, among others. The opinion in *Airborne* was filed simultaneously with this opinion.

3. The benefit was one-time, of course, because in the future Lucky could not, and did not, deduct payments for which a deduction had been claimed in an earlier year. Subsequent deductions were thus limited to twelve per taxable year.

these deductions that were disallowed by the Commissioner and the Tax Court.

## III

■ The plain meaning of § 404(a)(6) supports the Tax Court's decision. The first payment that Lucky made after the end of the 1986 taxable year was clearly "on account of" that year because the payment was required under the collective bargaining agreements for hours worked by covered employees during the final month of the taxable year. The following seven or eight payments were required to be paid because of work done during the taxable year ending in 1987, not the previous year. The bare language of the statute precludes the deduction of those payments on the 1986 return.

■ Lucky's contention that it may deduct the additional payments in 1986 is based upon Revenue Ruling 76–28, which provides in pertinent part that, if the employer claims payments as deductions in the prior taxable year:

> [A] payment made after the close of an employer's taxable year to which amended section 404(a)(6) applies shall be considered to be on account of the preceding taxable year if (a) the payment is treated by the plan in the same manner that the plan would treat a payment actually received on the last day of such preceding taxable year of the employer....

Rev. Rul. 76–28, 1976–1 C.B. 107.[4] Lucky insists that the last seven or eight payments that it attributed to the 1986 taxable year were necessarily treated the same as if they had been received on the last day of the 1986 taxable year, because the plans to which it contributes are all defined-benefit plans. A defined-benefit plan, unlike a defined-contribution plan, does not maintain individual accounts for each employee which require precise accounting for the date and amount of contribution. In the defined-benefit plans to which Lucky contributes, the worker's pension is calculated according to a formula based on years worked and highest salary

maintained over a particular period. Because the employer's contribution has no direct relation to the workers' benefits, the contributions are simply placed in one common pool to fund the entire plan. Thus, Lucky argues, all contributions are treated the same no matter when they are received. Its last seven or eight contributions are thus deductible, according to Lucky, under Rev. Rul. 76–28 because they were treated by the plan in the same manner as they would have been treated if received on the last day of the 1986 taxable year.

■ Where and how the money is deposited, however, reflects only one aspect of its treatment. In focusing solely on that factor, Lucky ignores the procedures that employers and administrators use to determine contribution amounts, as well as the process of accounting for contributions to ensure that employers keep pace with their obligations to the plans. The parties do not dispute the Tax Court's findings that, under the terms of the relevant collective bargaining agreements, Lucky was required to make contributions to the CBA plans near the end of each month. *Lucky Stores, Inc.*, 107 T.C. at 3. The amounts of the contributions were determined by the hours or weeks of employee service that were rendered during the immediately preceding month. *Id.* at 4. Plan administrators monitored the dates of receipt for the monthly contributions, and were empowered to levy interest charges and late fees on delinquent accounts. *Id.* at 5. Moreover, plan administrators were not prepared to process contributions that were in excess of the required amounts, and Lucky made no such advance contributions. *Id.* at 6. Plan administrators treated each remittance as the fulfillment of Lucky's required contribution for a discrete month. Thus the seven or eight contributions in issue were treated by the plans as payments satisfying Lucky's obligations in 1987, which is not the same as they would have been treated if received on the last day of the 1986 taxable year. Lucky does not meet the requirement of Rev. Rul. 76–28.[5]

---

4. Although revenue rulings do not have the force of law, they "do constitute a body of experience and informed judgment to which courts may properly resort for guidance in the interpretation of relevant revenue statutes and regulations."

*Watts v. United States,* 703 F.2d 346, 350 n. 19 (9th Cir.1983).

5. Lucky relies on several private letter rulings and one technical advice memorandum of the Internal Revenue Service as establishing a prac-

As the government points out, the Tax Court decision serves the purposes of § 404(a)(6). The original period of grace provided by that section was sixty days, which Congress later extended because of the difficulty taxpayers experienced in calculating the maximum deductible contribution for the expired taxable year. *See Don E. Williams Co. v. C.I.R.*, 429 U.S. 569, 575–76, 97 S.Ct. 850, 51 L.Ed.2d 48 (1977). For multi-employer plans, § 413(b)(7) provides that, for purposes of establishing the maximum deduction under § 404(a), the contributions of all employers shall be treated as made by a single employer. An employer's contribution is considered not to exceed the limit "if the anticipated employer contributions for such plan year (determined in a manner consistent with the manner in which actual employer contributions for such plan are determined) do not exceed such limitation." *Id.* As the government argues and the Tax Court recognized, plan administrators could not arrive at meaningful figures for anticipated contributions if employers were able to attribute to a taxable year payments based on work performed after that year. Lucky counters that the plan administrators' projections under § 413(b)(7) ought not to include payments "deemed" to be made during the taxable year, and that its allocation of extra payments to the taxable year therefore will not upset the scheme of § 413(b)(7). In our view, the government has the better of this argument. We need not rule on the issue, however, because we do not regard it as determinative. The reason that Lucky's additional payments were disallowed is not that they exceeded the calculated maximum allowable deduction for 1986; they were disallowed because they were not paid during the 1986 taxable year, as required by § 4(a)(1)(A), and they did not meet the conditions of § 404(a)(6) for an exception to that requirement. Lucky's disputed payments were not "on account of" its 1986 taxable year, and the Tax Court properly upheld their disallowance.

tice of the IRS permitting deductions such as those claimed by Lucky. Taxpayers other than those to whom such rulings or memoranda were issued are not entitled to rely on them. *See Norman Corp. v. District Director of Internal Rev-*

## IV

Lucky asserts that the Tax Court abused its discretion in denying reconsideration. It does not support this contention with argument, and we reject it.

Lucky also contends that the Tax Court erred in rejecting its request to take judicial notice. We find no merit in the contention. The matter submitted by Lucky included non-noticeable material, *see* Fed.R.Evid. 201, and also included private letter rulings and technical advice memoranda upon which Lucky was not entitled to rely. *See* note 4, supra. The Tax Court considered and rejected Lucky's written request; Lucky was not entitled to a formal hearing under Fed. R.Evid. 201. *See Allen v. Los Angeles*, 92 F.3d 842, 848 n. 7 (9th Cir.1996), *overruled on other grounds, Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir.1997).

## V

The judgment of the Tax Court is, in all respects,

**AFFIRMED.**

*enue*, 446 F.2d 1374, 1375 (9th Cir.1971); *Minchin v. Commissioner*, 335 F.2d 30, 32–33 (2d Cir.1964); Rev. Proc. 90–2, 1990–1 Cum. Bull. 386, 398. Nor could the IRS establish a binding practice in conflict with § 404(a)(6).