**AIRBORNE FREIGHT CORPORATION, Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant.**

No. 97–35129.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 1998.

Decided Aug. 20, 1998.

Steven W. Parks, United States Department of Justice, Tax Division, Washington, DC, for defendant-appellant.

John D. Lowery, Riddell, Williams, Bullitt & Walkinshaw, Seattle, Washington, for plaintiff-appellee.

Paul J. Sax, Orrick, Herrington & Sutcliffe, L.L.P., San Francisco, California, for amici curiae.

Before: CANBY, and REINHARDT, Circuit Judges, and RESTANI,[1] Judge, United States Court of International Trade.

CANBY, Circuit Judge:

The United States appeals two summary judgment rulings by the district court, which we review de novo. *See Orthopaedic Hosp. v. Belshe,* 103 F.3d 1491, 1495 (9th Cir.1997). The rulings came in the course of Airborne Freight Corporation's tax refund suit. The first one overturned the Commissioner's determination that Airborne had improperly deducted contributions paid to several qualified multi-employer defined-benefit pension plans after the end of the taxable years in issue, pursuant to 26 U.S.C. § 404(a)(6)(1986). We reverse this decision on the authority of *Lucky Stores, Inc. v. Commissioner of Internal Revenue,* 153 F.3d 964 (9th Cir.1998), filed simultaneously with this opinion.

The United States also appeals the district court's ruling that Airborne was entitled to investment tax credits, pursuant to Pub. L. No. 99–514, § 204(a)(7), for property that it placed in service in 1989 and 1990 in its world headquarters building. We conclude that Airborne was entitled to investment tax credits, but only for property that had a class life of at least seven years. Accordingly, we vacate this portion of the district court's judgment, and remand.

---

1. The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

## DISCUSSION

### I. Deductions for Contributions to Multi–Employer Defined–Benefit Pension Plans

Pursuant to collective bargaining agreements, Airborne paid monthly contributions to several qualified multi-employer defined-benefit pension plans ("CBA plans") on behalf of its unionized employees. The amount of contribution due the plans from Airborne in any given month depended upon the number of hours worked by covered employees at particular rates of pay. Employers, whether on a cash or accrual basis, may deduct contributions to qualified pension plans in the taxable year when the contributions were actually paid. *See* 26 U.S.C. § 404(a). An exception to this rule provided that:

> a taxpayer shall be deemed to have made a payment on the last day of the preceding taxable year if the payment is on account of such taxable year and is made not later than the time prescribed by law for filing the return for such taxable year (including extensions thereof).

26 U.S.C. § 404(a)(6).

Prior to 1989, Airborne deducted the twelve monthly contributions attributable to employee service during a particular taxable year from its taxable income for that same year. The twelfth payment was normally made after the end of the taxable year, pursuant to § 404(a)(6). Airborne then changed its practice. On its 1989 tax return, filed in September 1990, Airborne deducted the contributions that were based on employee service for the twelve months in 1989 plus the contributions for the first eight months in 1990. The effect of this change was to accord Airborne a one-time benefit of an additional deduction of an average of seven months' contributions. On its 1990 tax return, filed in September 1991, Airborne deducted the contributions for the last four months in 1990 plus the first eight months

in 1991, for a total of twelve months' contributions. The Commissioner disallowed the deductions of $6,365,860 on Airborne's 1989 return that were based on contributions resulting from hours worked in 1990, and disallowed deductions of $491,036 on Airborne's 1990 return that resulted from hours worked in 1991. Airborne paid the tax and sued for a refund in district court. The district court granted Airborne's motion for summary judgment, and the United States now appeals.

■ Our decision on this issue is controlled adversely to Airborne by our decision in *Lucky Stores, Inc. v. CIR*, 153 F.3d 964 (9th Cir.1998), which deals with the identical issue and was filed simultaneously with our decision in this appeal.[2] In *Lucky Stores*, we concluded that employer contributions to CBA plans that were paid after the end of the taxable year and were based on employee hours worked after the end of the taxable year could not be considered as paid "on account of" that taxable year. Accordingly, we now conclude that the district court erred when it determined that Airborne's contested deductions for such contributions were proper.

### II. The World Headquarters Exception to the Repeal of the Investment Tax Credit

Prior to 1986, taxpayers could receive an income tax credit for up to 10 percent of investment in certain tangible and depreciable property, such as leasehold improvements, equipment, and furnishings. Taxpayers were eligible for the tax credit in the year that the property was placed in service. The Tax Reform Act of 1986 generally repealed the investment tax credit for property placed in service after December 31, 1985. Pub.L. No. 99–514, § 211(a), 100 Stat.2085, 2166 (1986) (codified at 26 U.S.C. § 49(a) (1986)).[3] The Act created an exception from

---

**2.** We heard arguments in *Lucky Stores* on the same day that we heard the arguments in this appeal.

**3.** Congress subsequently amended § 49 when it eliminated expired or obsolete investment tax credit provisions from the Tax Reform Act of 1986. Congress simultaneously resurrected the

investment tax credit for expenditures for building rehabilitation, for equipment related to solar and geothermal power, and for reforestation. *See* Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508, § 11813(a), 104 Stat. 1388 (1990). Those amendments do not affect this case.

the repeal, however, for certain types of "transition property," including property falling within the "world headquarters" exception. *See* Pub.L. No. 99–514, § 204(a)(7).[4] That exception applied to:

> reasonable leasehold improvements, equipment, and furnishings placed in service by a lessee ... if—
>
> (A) the lessee ... is the original lessee of each building in which such property is to be used,
>
> (B) such lessee is obligated to lease the building under an agreement to lease entered into before September 26, 1985, and such property is provided for such building, and
>
> (C) such buildings are to serve as world headquarters of the lessee....

*Id.*

■ Airborne claimed investment tax credits for property that it placed in service in its headquarters building during 1989 and 1990. Airborne correctly asserts that it qualifies for the exception under its plain words: (A) Airborne is the original lessee of its building; (B) it was obligated to lease the building prior to September 26, 1985 (actually in 1983) and the property in issue is for that building; and (C) Airborne's building was to serve, and does serve, as its world headquarters.

The government argues, however, that the exception must be construed very narrowly, in light of the circumstances of its passage. Congress enacted § 204(a)(7) to allow the firm of Merrill Lynch to claim investment tax credits for property placed in service in its new world headquarters because Merrill Lynch had agreed to lease the new building in reliance on the old law. *See United States v. Kjellstrom,* 916 F.Supp. 902, 905–07 (W.D.Wis.1996); 131 Cong. Rec. 35285 (1986) (statement of Rep. Gingrich); 131 Cong. Rec. 14113 (1986) (statement of Sen. Metzenbaum). Consequently, the requirements of § 204(a)(7) reflect Merrill Lynch's particular circumstances. The government argues that it is inappropriate to extend the exception beyond those circumstances. Thus, it argues that the exception should apply to taxpayers who were obligated to lease the building before September 26, 1985, but *had not leased the building by that date.* It also argues that, to qualify, the taxpayer must have agreed to lease the *entire* building. If these narrow constructions are not adopted, according to the government, the purpose of the exception will be frustrated: taxpayers who agreed to lease and leased buildings decades before the repeal of the investment credit will be entitled to avail themselves of the transitional exception.

The difficulty with the government's argument is that none of the words italicized in the previous paragraph were written into § 204(a)(7). There is no disqualification of those who executed leases before September 26, 1985, and the government offers no reason why the execution of a lease creates a relevantly different condition from that which existed under an agreement to lease.

There is also no requirement that the whole building be leased. Although Airborne initially agreed to lease only about 75% of the building, it also acquired options to lease the remaining space. Airborne ultimately exercised it options so that it currently occupies the entire building, and no other tenant has ever occupied any part of the building. Further, Airborne maintains that it always intended to lease the entire building; the vacant space merely provided room for future growth. Under these circumstances, we conclude that Airborne entered into an agreement to lease "the building" for the purposes of § 204(a)(7).

We decline therefore to write the government's additional proposed restrictions into the statute in order to confine the exception virtually to a class of one. We have no quarrel with the government's argument that, in light of its purpose, the exception should be available only to those whose expectations at the time they undertook their obligations would otherwise be defeated by the repeal of the investment credit. Airborne qualifies, however, under such a guiding principle.

Airborne, like Merrill Lynch, entered into an agreement to lease a new world headquar-

---

4. Throughout part II of this opinion, citations to § 49 refer to 26 U.S.C. § 49 (1986). All other section citations refer to Pub.L. No. 99–514, 100 Stat.2085 (1986).

ters prior to September 26, 1985. Both companies relied on the availability of the investment tax credit when they contracted to lease their new buildings. Airborne, like Merrill Lynch, was unable completely to occupy and equip its building prior to the repeal of the investment tax credit. Airborne thus falls within the spirit as well as the letter of § 204(a)(7).

Our conclusion that Airborne meets the requirements of § 204(a)(7) is not likely to open the floodgates envisioned by the government. Other companies that leased their world headquarters decades ago cannot have had their expectations defeated as they entered and originally equipped their buildings long before the repeal of the investment credit. Moreover, the opportunity for other taxpayers to take advantage of the world headquarters exception expired, at the latest, on January 1, 1991. *See* § 203(b)(2)(A). The exception remains a narrow and temporally limited one.

### A. The World Headquarters Exception Only Applied to Property With at Least a Seven Year Class Life

■ As we have stated, Congress excepted "transition property" from the general repeal of the investment tax credit. *See* §§ 49(b)(1), (e). Property described in the world headquarters exception generally qualifies as transition property. *See* § 204(a)(7). Congress imposed a number of requirements, however, for transition property to qualify for the investment credit. One such restriction is set forth in § 203, which provides in pertinent part:

(b) *General Transitional Rule.—*

(2) *Requirement that certain property be placed in service before certain date.-*

(A) *In General....* Paragraph (1) and section 204(a) ... [which includes the world headquarters exception] shall not apply to any property unless such property has a class life of 7 years and is placed in service before the applicable date determined under the following table:

| In the case of property with a class life of: | The applicable date is: |
| --- | --- |
| At least 7 but less than 20 years | January 1, 1989 |
| 20 years or more | January 1, 1991 |
| . . . . | |

(C) *Class Lives.—*

. . . .

(ii) property described in section 204(a) shall be treated as having a class life of 20 years....

Pub.L. No. 99–514, § 203(b)(2).

This section is not a model of clarity, but we read the opening restriction of subsection (A), standing alone, as requiring that the world headquarters exception not be available to property with a class life of less than 7 years. The plain words dictate that reading. The difficulty arises from subsection (C)(ii), which assigns to property described in § 204(a) a class life of 20 years. The district court read subsection (C)(ii) as establishing a 20–year class life for *all* § 204(a) property, thus entirely negating the 7–year–minimum requirement of subsection (A) of § 203(b)(2). We conclude that a more appropriate reading of subsection (C)(ii) is to consider it as "treating" § 204(a) property (which must have a class life of 7 years or more) as having a 20–year life for the purpose of the applicable date by which it must be placed in service-January 1, 1991. We recognize that this interpretation may negate the provision of subsection (A) with regard to such property with a life of at least 7 but less than 20 years. The district court's interpretation does even more violence to subsection (A), however, because it negates not only the same provision, but virtually all of subsection (A).

Our interpretation of § 203 is made more compelling by the fact that § 203 does not stand alone. It is supplemented by § 49(e)(1)(C), which provides in pertinent part:

(C) [I]n the case of transition property with a class life of less than 7 years-

(i) section 203(b)(2) of this Act shall apply, and

(ii) in the case of property with a class life-

(I) of less than 5 years, the applicable date shall be July 1, 1986, and

(II) at least 5 years, but less than 7 years, the applicable date shall be January 1, 1987....

26 U.S.C. § 49(e)(1)(C). Here again, the draftsmanship leaves much to be desired, but the most reasonable reading of this subsection is that it renders additional property eligible for the investment credit, and for practical purposes adds it to the table of class lives and service dates contained in § 203(b)(2).[5] *See* H.R. Conf. Rep. No. 99–841, 99th Cong.2d Sess., at II–54. If the district court's reading of subsection 203(b)(2)(C) were accepted, however, it would give all § 204(a) property a life of 20 years and entirely negate the above provisions of § 49(e)(1)(C).[6] We adhere to our conclusion, therefore, that the only effect of subsection (C)(ii) of § 203(b)(2) is to make applicable to eligible property with a class life of more than 7 years the required service date applicable to property with a class life of 20 years or more—January 1, 1991.

Therefore, Airborne is entitled to an investment tax credit for eligible property that it placed in service in its world headquarters during 1989 and 1990, but only if the property had a class life of at least seven years. *See United States v. Kjellstrom*, 916 F.Supp. 902, 908–09 (W.D.Wis.1996). Accordingly, we remand to the district court so that it may determine what portion of the property that Airborne placed in service in those years qualifies under the world headquarters exception.

## CONCLUSION

Airborne was not entitled under 26 U.S.C. § 404(a)(6) to deduct contributions paid to multi-employer defined-benefit CBA pension plans after the end of the taxable year, when those contributions were based upon hours worked by covered employees after the end

of the taxable year. We therefore reverse the district court with regard to that issue.

Eligible property that Airborne placed in service in its headquarters building during 1989 and 1990 qualifies under the world headquarters exception to the general repeal of the investment tax credit, provided that the property had at least a seven year class life. Accordingly, we affirm the district court's ruling that the world headquarters exception applies, but reverse its decision that transition property with a class life of less than 7 years qualified for the exception. We therefore vacate the portion of the district court's judgment relating to that exception and remand for further proceedings.

Each party shall bear its own costs on appeal.

**AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; REMANDED.**

---

**5.** Airborne's eligibility for credits under § 49(e) is not in issue, because this appeal concerns only property placed in service in 1989 and 1990, well after the dates required by § 49(e) for property having a class life of less than 7 years.

**6.** Airborne contends that § 49(e)(1)(C) would still have a function because it could apply to the different type of transition property described in § 203(b)(1). But § 203(b)(1), like § 204(a), is rendered inapplicable by § 203(b)(2)(A) to property with a class life of less than 7 years. There is no reason why § 49(e)(1)(C) should be effective in one context but not in another, when both are governed by the same clause of § 203(b)(2)(A).