**BASQUE STATION, INC.,**
Plaintiff—Appellee,

v.

**UNITED STATES of America,**
Defendant—Appellant.

**No. 01–35774.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 2002.*

Decided Dec. 17, 2002.

* Oral Argument occurred via telephone conference call.

Before RYMER, HAWKINS and McKEOWN, Circuit Judges.

MEMORANDUM **

## I. Taxable Sale

The district court erred in determining that a taxable sale did not occur between Basque Station, Inc. ("Basque") and Transport Petroleum ("Transport"). Former I.R.C. Section 4091(a) imposed an excise tax on the "sale" of diesel fuel "by a producer." 26 U.S.C. § 4091(a)(1990).[1] "Sale" is defined in the regulations as:

> An agreement whereby the seller transfers the property (that is the title or substantial incidents of ownership) in goods to the buyer for a consideration called the price, which may consist of money, services, or things.

26 C.F.R. § 48.0–2(a)(5).

### A. Transfer of Property

The district court found that Basque did not transfer property to Transport within the meaning of the regulations, believing there was no evidence that Basque "had, at any time, possession, control or ownership of the diesel fuel which was delivered to Transport." It is, however, undisputed that Basque was in a contractual relationship with Texaco and was legally obligated to pay for the entire shipment, whereas Transport was not in any contractual relationship with Texaco and Texaco had no recourse against Transport for payment. When orders were placed with Texaco using Basque's identification numbers, Basque became the owner of the entire shipment and could then do what it wished with the fuel.

That Transport's trucks would actually pick up the fuel from Texaco does not alter

1. The provisions regarding taxation of diesel fuel are now codified at 26 U.S.C. § 4081 *et seq.* This disposition, however, will refer to the provisions in effect during the relevant tax years.

the Transport–Basque relationship. Basque did not have its own trucks and had always used a third party to pick up fuel. Transport did not become the purchaser because it took delivery of the fuel. Delivery did not give it legal rights to the fuel any more than it gave the previous carriers legal title to the fuel.

Although Basque and Transport may not have intended to be in a buyer/seller relationship, their intent does not change the legal substance of the transaction. Texaco was not a party to their "co-purchase" agreement and was in a legal relationship only with Basque. Likewise, that Texaco was aware of and even encouraged the relationship between Basque and Transport does not alter the parties' legal obligations. Basque, legally entitled to the entire shipment, then transferred rights to a portion of that fuel to Transport. This satisfies the "transfer of property" aspect of the definition of "sale" in 26 C.F.R. § 48.0–2(a)(5).

### B. Consideration

The district court also found there was no evidence Basque received any consideration from Transport, noting that there was no evidence Basque retained any of the money it received from Transport, but instead passed all the money on to Texaco. The district court appears to have conflated "consideration" with "profit." It does not matter that Basque did not sell fuel to Transport at a premium—Basque was not giving the fuel away, and received compensation for the portion of fuel Transport retained. The price Basque charged Transport was simply equal to the price Texaco charged Basque.

### II. Producer–to–Producer Exception

Because there was a taxable sale, we now address the question initially raised in the 1999 appeal to this court regarding the applicability of the producer-to-producer exemption from the excise tax. *See* 26 U.S.C. §§ 4092(c) & 4093(b)(1990). In order to qualify as a "producer," one must register with the Secretary of the Treasury before incurring any tax liability. 26 U.S.C. § 4101(a). The district court concluded that Transport had satisfied these requirements by merely filing an application under Section 4101, even though Transport never received a Certificate of Registration number from the IRS.

 We disagree that Section 4101 can be satisfied by merely submitting the requisite form to the IRS. Although there were no formal regulations governing Section 4101 during the applicable time period, the IRS did issue Notice 88–30, 1988–1 C.B. 497, which clarified that in order to be exempt from the tax, the purchaser had to notify the seller of its Certificate of Registry number and that number had to appear on the invoice for each tax free sale.[2] Although nonbinding, the Notice indicated it could be relied upon to the same extent as revenue rulings, which guide this court in interpreting relevant statutes. *Lucky Stores, Inc. & Subsidiaries v. C.I.R.*, 153 F.3d 964, 966 n. 4 (9th Cir. 1998). This interpretation of the registration requirement is also consistent with the regulations that existed at the time with respect to the similar statutory regime for taxation of gasoline sales. 26 C.F.R. § 48.4082–1 ("wholesale distributor will be considered a producer of gasoline only ... after the date in which the distributor is

---

**2.** The final regulations further clarified this requirement by stating a "person is registered under section 4101 only if the district director has issued a registration letter to the person and that registration letter has not been revoked or suspended." 26 C.F.R. § 48.4101–1(a)(2).

issued a Certificate of Registry (Form 637) as a producer of gasoline.").

The district court erred in its initial holding that Transport had qualified as a "producer" under Section 4101 by merely submitting a registration form to the IRS. Because Transport never received a Certificate of Registration number, it is not a "producer" under Section 4092(b)(1)(A), and any sale between Basque and Transport is not exempt from the excise tax under Section 4093(b).

REVERSED.

---

* This disposition is not appropriate for publica- tion and may not be cited to or by the courts