**RAYBESTOS MANHATTAN, INC.**

v.

**The UNITED STATES.**

No. 325–77.

United States Court of Claims.

May 16, 1979.

David R. Biondi, Trumbull, Conn., attorney of record, for plaintiff Robert B. Sims, Trumbull, Conn., of counsel.

Arthur L. Biggins, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant. Theodore D. Peyser, Jr., Washington, D. C., of counsel.

Before DAVIS, NICHOLS and KASHIWA, Judges.

## OPINION

DAVIS, Judge:

Section 404 of the Internal Revenue Code allows a taxpayer-employer to deduct contributions to certain employee retirement, pension, and profit-sharing plans in "the taxable year when paid." *See* I.R.C. § 404(a). For such taxpayers on the accrual method section 404(a)(6) provides a grace period, allowing the taxpayer to deduct contributions made after the tax year "if the payment is on account of such taxable year and is made not later than the time prescribed by law for filing the return for such taxable year (including extensions thereof)."[1] Plaintiff Raybestos Manhattan, Inc. is an accrual method taxpayer which estab-

---

1. Section 404(a)(6) was amended in 1974 to extend the same grace period to cash basis taxpayers. Employee Retirement Income Se-
curity Act of 1974, Pub.L.No.93–406, § 1013(c)(2), 88 Stat. 923.

lished a qualified retirement plan for its employees in 1967. After the close of each of its 1968 and 1969 taxable years, but before the expiration of its time (with extensions) for filing its 1968 and 1969 returns, it made additional contributions to its plan. The issue before us is whether these additional grace-period contributions are properly deductible for 1968 and 1969, respectively. We hold not, because, although the contributions were within the grace period, the facts prove conclusively that they were not made "on account of" the taxable years 1968 and 1969, as section 404(a)(6) requires.

## I

The facts have all been stipulated and there is no dispute as to what happened.[2] Article IX of the Raybestos-Manhattan retirement plan stated that the company "planned and intended" to make contributions based on actuarial computations " * * * at least sufficient (i) to prevent the initial unfunded past service liability from increasing and (ii) to meet the future service cost [normal cost] accruing for the year." Although provisions of the plan made company funding discretionary, in 1968 taxpayer signed union contracts waiving its absolute discretion to fund the plan for five years.[3]

To implement Article IX, plaintiff hired an actuarial firm to compute its minimum liability. The actuary computed both the normal cost and the cost of amortizing the initial unfunded liability over forty years. The amortization of past unfunded liability included not merely interest on such liability (as required by Article IX of the retirement plan) but also a sum sufficient to cover the principal amortized over forty years. The actuary's report also provided the maximum contribution which would be tax deductible for that year, a sum several million dollars greater than both the normal cost and forty-year amortization costs.[4]

In both tax years 1968 and 1969, plaintiff paid and was allowed deductions for the amount necessary to cover the normal costs and forty-year amortization expenses, as established by its actuary.

In 1968 the actuary calculated $4,365,916 (adjusted for uncontested payments of one of plaintiff's subsidiaries) as the amount necessary to fund both normal and amortization costs, and taxpayer actually paid this sum within the time period allowed for filing its return (plus extensions). But taxpayer also paid within the return deadline an additional sum (after adjustments) of $880,429, which taxpayer initially credited on its own books as payment toward its 1969 costs.

In 1969 taxpayer paid within the filing deadline a sum of $4,399,468, as computed by its actuary (again with a small adjustment for one subsidiary). This amount, which included the $880,429 now claimed for 1968, was claimed and allowed as a deduction for 1969. Again, taxpayer in 1969 also paid within the filing deadline (i.

2. The necessary facts are stated in this opinion.

3. A representative union contract states that notwithstanding certain provisions of the retirement plan (which made all company contributions voluntary) the company would contribute until 1973 an amount sufficient to meet the minimum standards of Article IX, set forth *supra.*

4. "Normal costs" are the expenses of a retirement plan in the current year, and are computed by estimating a percentage of current costs multiplied by the annual compensation of employees enrolled in the plan. "Initial unfunded liability" is the total liability of the plan for all past services. When Raybestos Manhattan adopted the retirement plan, the governing regulations required that a company pay "normal costs" plus interest on initial unfunded liability. Article IX of plaintiff's plan adopts this formula. As indicated in the text, Raybestos Manhattan made a practice of contributing more than the then statutory minimum, by paying both (1) normal costs and (2) interest plus part of the principal of initial unfunded liability. *See generally* H.R.Rep.No.93–807, 93d Cong., 2d sess. 73–74, *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 4639, 4670, 4738–39; Beck, *Contributions to Qualified Plans: When, What and How Much?* 27 N.Y.U. Annual Institute on Federal Taxation 187, 218–220 (1969) [hereinafter cited as Beck, *Contributions to Qualified Plans* ].

e. the grace period) an additional sum (after adjustments) of $1,250,800, which it originally credited on its own books as payment toward 1970 plan costs.

In both 1968 and 1969, plaintiff's accountants accrued book liabilities only for the total actuarial costs (normal plus forty-year amortization costs). No liability was recorded in 1968 or 1969 for the additional amounts ($880,429 and $1,250,800, respectively) that taxpayer actually paid to the retirement plan prior to the tax filing deadline provided by section 404(a)(6), *supra*.

Plaintiff timely filed refund claims for 1968 and 1969, alleging that these additional amounts ($880,429 and $1,250,800) actually paid within the tax return deadlines for 1968 and 1969 should be credited to those years, rather than the subsequent tax years. The Internal Revenue Service denied the claims, and this suit was brought.

## II

■ The parties dispute whether the two additional payments (made during the grace periods for 1968 and 1969) were for retirement contributions properly accruable in those years. We do not consider that question because we are convinced that, even if the contributions represented by those payments are deemed *arguendo* to have been theoretically accruable in 1968 and 1969, the payments were not in fact made "on account of" those taxable years.[5] In this segment of our opinion we demonstrate, what seems absolutely clear, that to be deductible in a particular year a grace-period payment must actually be attributed by the taxpayer to or made by the taxpayer on account of that year.

To start with section 404(a)(6) itself, that is precisely what it says—a grace-period payment is deductible "if the payment is on account of such taxable year." The predecessor of section 404(a)(6), section 23(p)(1)(E) of the 1939 Code, established a sixty-day grace period and likewise required that the payment be "on account of such taxable year." Revenue Act of 1942, Pub.L.No.753, ch. 619, § 162(b), 56 Stat. 798, 865. Congress provided the grace period to allow accrual method taxpayers to compute maximum deductions, which were calculated on a percentage of employee compensation paid during the year. Because it would be difficult to calculate the precise amount of total compensation before the end of the taxable year, Congress gave accrual method taxpayers an extra sixty days. *See Hearings before the Senate Committee on Finance on the Revenue Act of 1942*, 77th Cong., 2d Sess., 465 (1942); *Don E. Williams Co. v. Commissioner*, 429 U.S. 569, 575–76, 97 S.Ct. 850, 51 L.Ed.2d 48 (1977). Although this grace period (now lengthened) affords taxpayers extra flexibility in calculating and timing their contributions, Congress still requires the contributions to be made "on account of" the taxable year.

The Internal Revenue Service's regulations interpreting section 404(a)(6) and its predecessor have consistently assumed that a taxpayer must in fact accrue a liability before utilizing the grace period. *See* Treas.Reg. § 29.23(p)–1(d) (1949) (grace period "intended to permit a taxpayer on the accrual basis to deduct *such accrued contribution or compensation* * * *") (emphasis added); Treas.Reg. § 39.23(p)–1(d) (1953) (same); Treas.Reg. § 1.404(a)–1(c) (1969) (grace period not applicable "unless, during the taxable year on account of which the contribution is made, the taxpayer incurs a liability to make the contribution, the amount of which is accruable under section 461 for such taxable year"). The Service's Revenue Rulings have reinforced this interpretation. *See* Rev.Rul. 56–366, 1956–2 Cum.Bull. 976; Rev.Rul. 71–38, 1971–1 Cum.Bull. 130, 131 ("Where the employer desires to make a contribution in excess of that called for by the plan formula * * * something in addition to the plan is necessary to show that the employer has incurred a liability to make the contribution.")[6] On

---

**5.** It is unquestioned that Raybestos Manhattan's contributions each constituted a valid "payment" under the statute. *Cf. Don E. Williams Co. v. Commissioner*, 429 U.S. 569, 97 S.Ct. 850, 51 L.Ed.2d 48 (1977).

**6.** In citing I.R.S. Rulings we do not intimate approval (or disapproval) of the precise requirements the Service establishes for the type and degree of proof of a liability. *See* note 8, *infra*.

facts similar to this case, where an employer contributed additional amounts beyond a predetermined formula, the Service ruled that such additional amounts could not be deemed paid during the taxable year under 404(a)(6). The Ruling stated that "where appropriate action is not taken to establish an accruable liability before the end of a taxable year, contributions in excess of a definite formula * * * which are paid after the close of the taxable year are not deductible for that year notwithstanding the grace period allowed by section 404(a)(6) of the Code." Rev.Rul. 63–117, 1963–1 Cum.Bull. 92, 94.

All cases (of which we are aware) in which deduction of a grace period payment was permitted have rested on some proof that the taxpayer actually incurred or recognized the liability in the taxable year for which the deduction was sought. *See, e. g.,* *Lozano, Inc. v. Commissioner,* 68 T.C. 366 (1977) (oral authorization by board of directors to take maximum deduction sufficient to fix liability); *Inland Sales Co. v. United States,* 40 A.F.T.R.2d ¶ 77–5022 (N.D.Tex.1977) (written minutes of board's approval of contribution fixed liability); *Joe Coker Pontiac, Inc. v. Commissioner,* 44 T.C.M. (P–H) ¶ 75,305 (1975) (director-officers' monthly approval of financial statements showing liability to profit-sharing plan fixed liability); *Misceramic Tile, Inc. v. Commissioner,* 27 T.C.M. (CCH) ¶ 28,854 (1968) (provisions of plans; board approval of financial statements showing accrual of money to plans; and listing amounts as liability on audited financial statements established definite liability). Other decisions have refused to allow attribution to a past taxable year without evidence linking the employer's contributions (made within the grace period) to a liability for that year. *See, e. g., Subscription Television, Inc. v. Commissioner,* 532 F.2d 1021 (5th Cir. 1976), *aff'g* 43 T.C.M. (P–H) ¶ 74,107 (1974) (liability not established when plans required approval of contributions by board of directors and no evidence of such approval); *Precision Indus., Inc. v. Commissioner,* 64 T.C. 901 (1975) (no liability to plan absent required determination of amount of contribution by board); *Barrett Timber & Dun-*

*nage Corp. v. Commissioner,* 29 T.C. 76 (1957) (liability not established when document establishing pension plan signed after grace period; no affirmative indications that pension committee directed employer's contribution to plan); *Abingdon Potteries, Inc. v. Commissioner,* 19 T.C. 23 (1952) (reviewed by the court) (no liability when plan documents not signed; trustees of plan appointed in subsequent year; no notification of employees). *Cf. Dejay Stores, Inc. v. Ryan,* 229 F.2d 867 (2d Cir. 1956) (L. Hand, J.) (expressing doubt that liability accrued when payments to pension plan made contingent on subsequent stockholder approval). *See also* Beck, *Contributions to Qualified Plans* at 209 ("The right to a grace period delay arises only if the employer was liable for the contribution as of the close of its taxable year.")

Though these authorities phrase their conclusions in various ways, they all stress that the taxpayer must show (or had already shown) a link between the payment and the taxable year (other than the stark fact that the payment was made during the grace period).

### III

In this case there is no evidence whatever—nothing in the company accounts, no corporate resolutions or records, no testimony of corporate officers, no actuarial statements, nothing in the terms of the retirement plan, no communications to the retirement plan or its trustee—to indicate that the additional payment of $880,429 was in fact made in the grace period for 1968 on account of that particular year, or that the additional payment of $1,250,800 was in fact made in the grace period for 1969 on account of that particular year. On the contrary, the company affirmatively designated, on its own books, the $880,429 payment to 1969 and the $1,250,800 payment to 1970. It was not until the refund claims that taxpayer asserted for the first time an attribution to the preceding years now involved.

Plaintiff makes two responses to this lack of proof that the payments were "on

account of" 1968 and 1969. First, plaintiff stresses that section 404 alters normal accounting rules and treats the accrual basis taxpayer the same as one on the cash basis. From this plaintiff seems to infer that no more is required than mere payment of some sum within the grace period, without any indication whatever of the year to which the payment is attributable. Of course, this contention is basically opposed to the statutory language, the regulations, and the case law. As demonstrated *supra*, all of these sources state or imply that some proof of an incurred liability for the particular year must be shown. The Tax Court has summarily rejected a similar contention, and we do likewise. *Misceramic Tile v. Commissioner*, 27 T.C.M. (CCH) ¶ 28,854 at 146–47 (1968). Raybestos' argument simply passes over the statutory requirement that, to be deductible, a grace period payment must be "on account of" the tax year to which the grace period is attached. Even a cash-method taxpayer to whom section 404(a)(6) applies (*see* note 1, *supra*) would have to show somehow that his grace-period cash payment was "on account of" that specific tax year, and not the later one.

Plaintiff's alternative point is that the terms of its 1968 union contracts required Raybestos Manhattan to pay a fixed and definite sum over five years, and that this is enough to prove that the two payments here involved were made "on account of" 1968 and 1969. As explained above, under these union agreements plaintiff waived its option to modify, suspend, or terminate funding of the retirement plan for five years. Taxpayer asserts that these agreements made Raybestos Manhattan liable for the total 5-year liability under the formula contained in Article IX, and concludes that this overall liability satisfies the section 404 standard. Plaintiff's theory is again buried by the statutory requirement that grace period payments must be made on account

of *the particular taxable year,* regardless of some total theoretical liability over a number of years. Plaintiff has conceded that the union contracts did not mandate payment in 1968 or 1969 of the additional amounts now sought to be deducted in those years. As we have said, Raybestos did not contemporaneously designate the additional payments to the tax years it now claims they were made for, but instead selected later years.[7] Taxpayer makes much of the fact that it had the option to pay a greater sum than it actually paid in 1968 and 1969; it points to the actuary's report that the maximum allowable deduction was several million dollars greater than the amounts Raybestos actually paid. However, whatever may have been taxpayer's theoretical options, the statute requires some proof that taxpayer actually elected to make the payment it now claims as a deduction for the particular year.

In a final attempt to demonstrate such an election, taxpayer refers to a 1967 resolution of the Raybestos Manhattan board, which is said to have carried over to 1968 and 1969. The board resolution, part of the initial resolution approving the retirement plan, states in pertinent part that Raybestos Manhattan:

> shall accrue on its books of account such additional amount as the officers, after consulting with the actuary, determine to be appropriate, and shall pay to the Trustee under the Retirement Plan as soon as practicable such accrued amount, such payment not to be made any later than the time within which the Company is permitted to file its Federal income tax returns for the calendar year 1967, or any extensions thereof * * *

Even if this resolution is construed to extend to the 1968 and 1969 tax years (a very liberal reading), plaintiff has not shown

---

7. Plaintiff cites various authorities, including Revenue Ruling 68–34, 1968–1 Cum.Bull. 181, for the proposition that a taxpayer's financial accounting treatment does not control deductibility under section 404. This proposition is generally valid, but without some indication attributing payments to a particular tax year

taxpayer fails to satisfy a requirement of proof under § 404(a)(6). Practitioners have long understood the requirement that some evidence of a liability in and payment for the particular tax year is required. *See* Beck, *Contributions to Qualified Plans* at 209.

that the additional sums at issue here were ever (1) determined by its officers to be "appropriate" for the years in question or (2) accrued on its "books of account" for those years.

█ The sum of it is that we have absolutely nothing showing that the designated grace-period payments were made "on account of" the years 1968 and 1969 (rather than 1969 and 1970 for which they were contemporaneously designated).[8] Rather, the evidence points to the opposite conclusion—that taxpayer under its actuary's computations intended these additional amounts to be deducted in subsequent tax years. To allow plaintiff to shift its year of contribution (and thereby alter its tax deductions) on the basis only of a subsequent statement in a refund claim would recognize a gross form of tax manipulation not intended by the Congress in section 404.[9]

### CONCLUSION OF LAW

Plaintiff is not entitled to recover and its petition is dismissed.

**8.** Since no evidence was presented here, we need not determine the quantum of evidence which would suffice to demonstrate payments were made "on account of" a particular tax year. *Compare* Rev.Rul. 56–366, 1956–2 Cum. Bull. 976; Rev.Rul. 71–38, 1971–1 Cum.Bull. 130 *with Joe Coker Pontiac, Inc. v. Commissioner,* 44 T.C.M. (P–H) ¶ 75,305 at 1308 (1975); *Inland Sales Co. v. United States,* 40 AFTR 2d ¶ 77–5022 at 5080 (N.D.Tex.1977).

**9.** Plaintiff also filed a refund claim relating to deduction of certain contributions to the employee retirement plan in 1967. The Service allowed this claim, and it is not before the court. The amounts deducted in 1967 differ in vital respects from the tax years now here. In 1967 the Service allowed taxpayer to deduct additional amounts which were below the total sum required to meet normal and amortization costs, as fixed by the actuary and approved in the minutes of a 1967 Board meeting. In 1968 and 1969 the Service similarly allowed deductions for the actuary's sum of normal costs and forty-year amortization expenses. What is now in litigation is the deduction of additional amounts above the actuary's estimate, and originally credited by taxpayer to a subsequent tax year.