**VONS COMPANIES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 00–234T.

United States Court of Federal Claims.

March 28, 2003.

Paul J. Sax, Orrick, Herrington & Sutcliffe, LLP, San Francisco, California, for plaintiff.

Benjamin C. King, Jr., with whom was Mildred L. Seidman, Tax Division, United States Department of Justice, for defendant.

## OPINION

ALLEGRA, Judge.

This tax suit is before the court on the parties' cross-motions for summary judgment. The Vons Companies, Inc. (Vons or plaintiff) seeks a refund of federal income tax arising out of the disallowance by the Internal Revenue Service (IRS) of deductions claimed for contributions made to multiemployer defined benefit pension plans. At issue is whether plaintiff's contributions to qualified retirement plans made after the close of its 1991 and 1992 taxable years, but before the extended due date for filing its returns for those years, were deductible in the year claimed under section 404(a)(6) of the Internal Revenue Code of 1986 (26 U.S.C.) (the Code). Vons claims that its deductions were explicitly authorized by Revenue Ruling 76-28, 1976-1 C.B. 106, 1976 WL 37775, and further asserts that two appellate decisions which reject its construction of section 404(a)(6) of the Code, *American Stores Co. v. Comm'r*, 108 T.C. 178, 1997 WL 143916 (1997), *aff'd*, 170 F.3d 1267 (10th Cir. 1999), *cert. denied*, 528 U.S. 875, 120 S.Ct. 182, 145 L.Ed.2d 153 (1999) and *Lucky Stores, Inc. & Subs. v. Comm'r*, 107 T.C. 1, 1996 WL 441339 (1996), *aff'd*, 153 F.3d 964 (9th Cir.1998), *cert. denied*, 523 U.S. 1111, 119 S.Ct. 1755, 143 L.Ed.2d 787 (1999), were wrongly decided. This court concludes otherwise and, like the courts before it, holds that Vons is not entitled to the deductions claimed. It, therefore, grants defendant's motion for summary judgment.

## I. FACTUAL BACKGROUND

Vons is in the grocery business, operating approximately 350 stores throughout southern California and Nevada. Most of its employees are members of labor unions. Vons is a signatory to a number of collective bargaining agreements ("CBAs") with labor unions, under which it is obliged to contribute to the unions' pension funds to cover the retirement benefits of its employees. These are multiemployer defined benefit plans, which are jointly administered by trustees appointed in equal numbers by the involved union and the participating employers. Employer contributions to the plans are paid into the plans' designated bank accounts and co-mingled with all other contributions, which are then invested to allow for plan benefits to be paid.

During the period 1990–1993, Vons contributed to 10 multiemployer defined benefit plans pursuant to contribution formulas in the CBAs. As required by the CBAs, Vons' contributions were made monthly to the plans based on hours or days worked by covered employees the prior month.[1] With each payment, Vons provided the pension funds with a remittance report of the hours or days worked by each participating employee during the prior month, which data formed the basis for its contribution. All of the contributions at issue in this case were made in the month immediately succeeding the month in which the related services were performed.

Each pension fund is required to submit a Form 5500 to the IRS each year, setting forth all contributions and other income received and all expenses incurred during the plan year. With some exceptions not herein relevant, pension funds ordinarily report as contributions only those amounts paid for services performed during the plan year.

---

1. Typical of these provisions are several articles found in Vons' CBA with the International Association of Machinists (IAM). Regarding the contribution obligation, this agreement provided:

   The Employers agree to continue to pay to the International Association of Machinists National Pension Trust Fund on behalf of each employee covered by this Agreement a sum equal to $7.60 for each day for which said employee receives pay, which shall include paid holidays and vacations, not to exceed a maximum of thirty-eight dollars ($38.00) per week.

   The amounts owed under this CBA increased to $8.40 per day in 1991 and $9.20 per day in 1992.

   Regarding the timing of these contributions, this CBA indicated that "[t]he total amount due for each calendar month shall be remitted in a lump sum not later than the twentieth (20th) day of the following month," indicating further that "time is of the essence." Penalties and interest were owed if a payment was not made within 30 days of the due date. Under the CBA, there were limited exceptions to these payment rules to deal with, for example, amounts that were mistakenly not contributed, but no such provisions were triggered during any of the years in question.

Vons' tax years for 1991 and 1992 ended on December 29, 1991, and January 3, 1993, respectively. Vons timely filed its federal income tax returns, with extensions, for these fiscal years on September 14, 1992, and September 15, 1993, respectively. In its tax return for 1991, Vons deducted contributions made by it to the multiemployer defined benefit plans in the months of October 1991 through September 1992. In its tax return for 1992, Vons deducted contributions made by it to these same multiemployer plans in the months of October 1992 through September 1993.[2] Notwithstanding this, for book purposes, Vons reported the contributions it paid in 1992 and 1993 as liabilities in those years, and not in the years for which it deducted those payments.

For both 1991 and 1992, the IRS disallowed deductions for contributions made to the plans after the year end but before the filing of the return, instead, allowing those deductions for the year in which the contributions were made.[3] The IRS asserted deficiencies attributable to these disallowances in the amounts of $1,506,241 for 1991 and $4,636,565 for 1992. Vons paid the amount of the tax for its 1991 tax year on or about December 15, 1997, and paid the amount of the tax for its 1992 tax year on or about December 12, 1997. This lawsuit ensued.

## II. DISCUSSION

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

This dispute centers on the timing of the deductions in question—often a hotly contested issue in tax cases owing to the economic advantage of taking deductions sooner rather than later.[4] Under the CBAs, Vons determined the amount of its monthly contribution by multiplying the units of service worked by its covered employees that month by a specified contribution rate. For book purposes, it treated those obligations as liabilities in the years the subject services were rendered. But for tax purposes, purporting to rely on section 404(a)(6) of the Code, Vons "accelerated" the deduction of the contributions in question by deducting in a given year amounts that related to services which were performed in the nine or so months immediately following the close of that year. Defendant objects to this approach, as the IRS did before it, asserting that, under section 404(a)(6), Vons may deduct only those contributions paid in respect of covered services performed in each taxable year.

Under section 404(a)(1) of the Code, a contribution to a qualified pension plan is ordinarily deductible only in the taxable year

| | | |
|---|---|---|
| July | $ 752,923.48 | $2,950,422.56 |
| August | $ 755,814.50 | $2,997,095.43 |
| September | $1,053,512.45 | $3,509,613.63 |

As noted, the IRS instead allowed the deductions listed for the years in which the services upon which the contributions were based were rendered (*e.g.*, for services rendered in January of 1992, the deduction was allowed in 1992, rather 1991).

2. For Vons' fiscal years 1983–1985, Vons deducted contributions to plans made after the close of its taxable years, which were challenged by the IRS upon audit and allowed. For Vons fiscal years 1986–1990, Vons' returns also included deductions for post-year contributions to plans, which were not challenged by the IRS and allowed to stand.

3. The IRS disallowed deductions claimed on Vons' 1991 and 1992 returns for those contributions made to the plan after the return year, but before the filing of the return, as follows:

| Month | Fiscal Year 1992 | Fiscal Year 1993 |
|---|---|---|
| January | $ 894,676.12 | $1,031,622.81 |
| February | $ 767,885.98 | $1,280,502.89 |
| March | $ 764,191.45 | $ 994,857.75 |
| April | $ 961,269.35 | $ 969,830.86 |
| May | $ 790,200.13 | $ 976,179.08 |
| June | $ 989,098.68 | $3,471,824.96 |

4. See, e.g., *United States v. Hughes Properties, Inc.*, 476 U.S. 593, 106 S.Ct. 2092, 90 L.Ed.2d 569 (1986); *see also* Erik M. Jensen, "The Supreme Court and the Timing of Deductions for Accrual–Basis Taxpayers," 22 Ga.L.Rev. 229, 229–30 (1988) ("The time value of money dominates the current theoretical tax literature, ... and timing is an important practical issue as well. All *other things being equal*, informed taxpayers seek to accelerate deductions and to defer the inclusion of income.")

"when paid." As noted by the Supreme Court, the absence of any language in this provision referring to the accrual of such liability "indicates [a] congressional intent to permit deductions for profit-sharing plan contributions only to the extent they are actually paid and not merely accrued or incurred during the year." *Don E. Williams Co. v. Comm'r,* 429 U.S. 569, 574, 97 S.Ct. 850, 51 L.Ed.2d 48 (1977). Congress, however, provided a grace period for taxpayers making such contributions via Section 404(a)(6) of the Code, which provides, for purposes of section 404(a)(1), that "a taxpayer shall be deemed to have made a payment on the last day of the preceding taxable year if the payment is on account of such taxable year, and is made not later than the time prescribed by law for filing the return for such taxable year (including extensions thereof)." [5] Under section 6072(b) of the Code, this period, for Vons, was two and one-half months after the close of its fiscal year, or approximately mid-March; with extensions, this permitted Vons to file its returns as late as mid-September.

Section 404 originated as section 23(p) of the 1939 Code, as amended by section 162(b) of the Revenue Act of 1942, 56 Stat. 863.[6] The 1942 committee reports refer to an accrual-basis taxpayer's deferral of paying compensation and state that, if this was done "under an arrangement having the effect of a ... profit-sharing ... plan ... deferring the receipt of compensation, he will not be allowed a deduction until the year in which the compensation is paid." H.R.Rep. No. 77–2333, at 106 (1942); S.Rep. No. 77–1631, at 141 (1942). "This ... would have created a computational problem for the accrual-basis taxpayer," the Supreme Court observed in

*Don E. Williams,* "who wished to make the maximum contribution possible under the percentage limitations of the statute, *see* section 404(a)(3)(A), but who would not be able to determine that figure until after the close of the taxable year." 429 U.S. at 575–76, 97 S.Ct. 850 (citing Hearings before the Senate Committee on Finance on the Revenue Act of 1942, 77th Cong., 2d Sess., 465 (1942)).[7] Accordingly, Congress provided accrual basis taxpayers a grace period, originally 60 days under section 23(p)(1)(E) of the 1939 Code, as amended, 56 Stat. 865, to allow them to determine the percentage limitation and make appropriate contributions. *See Don E. Williams,* 429 U.S. at 576, 97 S.Ct. 850.

In 1948, the House Committee on Ways and Means sought to lengthen the grace time. H.R.Rep. No. 80–2087, at 13 (1948). This proposal stalled in the Senate. But in 1954, the grace period was extended to coincide with the period for filing a return, thereby giving birth to section 404(a)(6) of the 1954 Code. In describing its purpose, the accompanying Senate report continued to view this provision as merely allowing a taxpayer additional time to make calculations based upon facts deriving from the tax year just completed:

> Under present law a taxpayer on the accrual basis is deemed to have made a contribution to an employee plan in the year of accrual provided he actually makes payment within 60 days after the close of that year. Taxpayers have complained that the 60–day period is too short in view of the complicated actuarial computations required in determining the actual amount of the contribution.

5. Section 404(a)(1) also provides rules governing the maximum amount of deductible contributions to qualified plans. In the case of a collectively bargained pension plan, the deduction limit of section 404(a)(1) is determined "as if all participants in the plan were employed by a single employer." 26 U.S.C. § 413(b)(7). For such plans, contributions by employers are not considered to exceed such limitations if "anticipated employer contributions for such plan year (determined in a manner consistent with the manner in which actual employer contributions for such plan year are determined) do not exceed such limitation." *Id.*

6. Section 23(p)(1)(E) provided that "a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year of accrual." 56 Stat. 865.

7. As is true today, the particular percentage limitation referenced by the Supreme Court is based upon compensation paid or accrued "during the taxable year." *Compare* § 23(p)(1)(A) of the 1939 Code *with* § 404(a)(3)(A) of the Code.

S.Rep. No. 83–1622, at 55 (1954); *id.* at 292 ("This provision is like section 23(p)(1)(E) of the Code except that the present law grants a period of only 60 days after the close of the taxable year in which such payment must be made ..."); *see also* H.R.Rep. No. 83–1337, at A151 (1954). In section 1013 of the Employee Retirement Income Security Act of 1974, 88 Stat. 923, Congress altered this provision to extend the grace period to cash-basis taxpayers. The legislative history of this provision again characterized it as "allow[ing] taxpayers time after the close of their taxable year to determine the amount of their contributions to be made to a plan." H.R.Rep. No. 93–807, at 101 (1974), U.S.Code Cong. & Admin.News 1974, at 4670, 4767.

Against this historical backdrop, we return to the central issue facing the court—how should section 404(a)(6) be construed. For the reasons that follow, this court holds that a contribution is not "on account of" a given year within the meaning of this provision if it is made only because of work performed in a later tax year.

■ We begin, as we must, with the statute's language.[8] Various lexicons define the phrase "on account of" alternatively as meaning "because of," "for the sake of" or "by reason of." *See The American Heritage Dictionary of the English Language* 12 (4th ed.2000); *Merriam–Webster's Collegiate Dictionary* 8 (10th ed.1998). As a matter of abstract linguistics, all three formulations suggest that the deductibility of a contribution must be causally connected to events that occurred during the year to which it is attributable and not to events that happened thereafter. Indication that this understanding is firmly rooted in the text of section 404(a)(6) may be found in decisions interpreting the same language in several other sub-sections of the employee pension provisions, all of which have likewise taken the phrase "on account of" to mean "because of." [9] Of course, such constructions of related provisions are entitled to weight under the common sense rule that a single phrase is meant to carry a given concept in related provisions. *See Bank of America Nat'l Trust & Savings Ass'n v. 203 North LaSalle Street Partnership,* 526 U.S. 434, 451, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999); *Cohen v. de la Cruz,* 523 U.S. 213, 219–20, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (there is a presumption that "equivalent words have equivalent meaning when repeated in the same statute"). Application of this construction aid is particularly apt here given the legislative history traced above, which indicates that the statute was intended only to allow a taxpayer additional time to determine the amount of contribution attributable to the prior taxable year and not to allow for enhanced deductions. The statute's language, its context and legislative history thus all coalesce to blunt the force of plaintiff's thrust.

Here, the payments made by Vons during the grace period plainly were not attributable to the prior tax year as they in no way were causally connected to events that occurred during that year. But, plaintiff contends that section 404(a)(6) should be interpreted from a "benefits" perspective. It states that since contributions to defined benefit plans are all placed in a single pool and all benefits to all beneficiaries are paid from such pool, such contributions are not made "on account of" any work performed in a given year, but rather are "on account of" any year to which the contributor assigns them. *Per contra.* The illogicality of this position stems, in part, from the underlying premise that the same Congress which enacted detailed provisions

---

8. *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In analyzing this language, the court is guided by a "fundamental canon of statutory construction," to wit, that, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979).

9. *See, e.g., Adler v. Comm'r,* 86 F.3d 378, 380 (4th Cir.1996) (phrase "on account of" as used in section 402(e)(4)(A)(iii) of the code "[o]bviously ... requires that there be a causal connection between the employee's separation from service and the distribution from the qualified plan"); *Funkhouser v. Comm'r,* 375 F.2d 1, 6 (4th Cir. 1967) (similarly construing same phrase in section 402(a)(2) of the Code); *Osterman v. Comm'r,* 50 T.C. 970, 974, 1968 WL 1455 (1968) (same); *Gittens v. Comm'r,* 49 T.C. 419, 423, 1968 WL 1396 (1968) (same).

governing the deductibility of pension contributions would eviscerate those same rules by allowing a taxpayer to allocate a given contribution to a taxable year and deduct it through a simple, arbitrary designation—a contribution is "on account of" a prior taxable year, Vons claims, because the taxpayer says so.[10] While elections in the tax law are not unknown, they are usually not so well concealed—nor so open-ended.[11] And, importantly, the *ipse dixit* that section 404(a)(6) requires only the assignment of a contribution to a given year runs headlong into the statute's language and legislative history, both of which suggest that a meatier causal connection between the contribution and the tax year in question is required.[12]

In so concluding, this court does not write on a *tabula rasa*—the Tax Court, as well as the Ninth and Tenth Circuits, have all flatly rejected plaintiff's position. Thus, in *Lucky Stores, Inc., supra,* the taxpayer, like Vons, sought to deduct contributions made after the close of the taxable year that related to work also performed after the close of that year. The Ninth Circuit affirmed the Tax Court's decision that, to the extent these grace period contributions were attributable to work performed after the end of the taxable year, they were not deductible. In this regard, it reasoned:

> The plain meaning of § 404(a)(6) supports the Tax Court's decision. The first payment that Lucky made after the end of the 1986 taxable year was clearly "on account of" that year because the payment was required under the collective bargaining agreements for hours worked by covered employees during the final month of the taxable year. The following seven or eight payments were required to be paid because of work done during the taxable year ending in 1987, not the previous year. The bare language of the statute precludes the deduction of those payments on the 1986 return.

153 F.3d at 966. Notably, the court also rejected the taxpayer's reliance on private rulings and other administrative documents

10. Consistent with this view, at oral argument, plaintiff's counsel candidly admitted that, under its argument, an employer could allocate whatever amount it paid during the grace period to a prior year and was not limited to a month-by-month deduction of the sort taken by Vons here. Ultimately, plaintiff's theory thus does not relate solely to the timing of deductions, but in other cases might lead a taxpayer to bunch together and deduct more than 12 months of contributions in a single year. Such, of course, was precisely the case in *Lucky Stores, Inc., supra,* and *American Stores, supra,* both discussed in detail, *infra.*

11. Research reveals around 30 provisions of the Code which provide for taxpayer elections, all of which do so quite explicitly. *See, e.g.,* the following Code provisions: § 30 (no credit for qualified electric vehicle "if the taxpayer elects to not have this section apply to such vehicle"), § 173 (no deduction for circulation expenses "if the taxpayer elects" to charge such expenses to a capital account); § 461(c)(1) (providing for special rule for accrual of real property taxes "at the election of the taxpayer"); § 864(f)(1)(C) (allocation of research and experimental expenses for foreign tax credit purposes subject to "annual election of the taxpayer"); § 1033(j)(1) (providing for special rules to implement microwave relocation policy "if the taxpayer elects the application of this subsection"). Several other of these elections are in the pension rules themselves. *See* § 408 (indicating that limits on IRA contributions adjusted "if a taxpayer elects" to treat a

contribution as nondeductible); § 412 (providing different rules for increases under existing CBAs "if the taxpayer elects"). When Congress wants to afford a taxpayer an election, it apparently knows how to do it.

12. The latter conclusion draws further support from several Supreme Court and Federal Circuit decisions construing section 104(a)(2) of the Code, which provides an exclusion from gross income for damages "on account of" personal injuries. Relying on the plain meaning of the quoted language, these cases have consistently required that there be some causal connection between a damage award and a personal injury—a taxpayer's mere invocation of the provision has not been deemed sufficient. *See, e.g., O'Gilvie v. United States,* 519 U.S. 79, 83, 117 S.Ct. 452, 136 L.Ed.2d 454 (1996) (punitive damages not received "on account of" personal injuries where not awarded "by reason of, or because of, the personal injuries"); *Comm'r v. Schleier,* 515 U.S. 323, 330, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) (damages not received "on account of" personal injuries within the meaning of section 104(a)(2) where payment was "completely independent of the existence or extent of any personal injury"); *Abrahamsen v. United States,* 228 F.3d 1360, 1363 (Fed.Cir.2000) (same), *cert. denied, sub nom., Willoughby v. United States,* 532 U.S. 957, 121 S.Ct. 1484, 149 L.Ed.2d 372 (2001); *Reese v. United States,* 24 F.3d 228, 230 (Fed.Cir.1994) (same); *see also Bank of America,* 526 U.S. at 451, 119 S.Ct. 1411.

claimed to reveal an administrative practice of allowing the deductions, noting that "[t]axpayers other than those to whom such rulings or memoranda were issued are not entitled to rely on them," and adding "[n]or could the IRS establish a binding practice in conflict with § 404(a)(6)." *Lucky Stores,* 153 F.3d at 966 & n. 5. *See also Airborne Freight Corp. v. United States,* 153 F.3d 967, 969 (9th Cir.1998) (reaffirming that "contributions to CBA plans that were paid after the end of the taxable year and were based on employee hours worked after the end of the taxable year could not be considered as paid 'on account of' that taxable year").

In *American Stores, Co., supra,* the Tenth Circuit again rejected the construction of section 404(a)(6) that plaintiff offers here. There, the court pointed out that section 404(a)(6) "creates a fiction, by treating a post-taxable year payment as though it were made on the last day of the taxable year." 170 F.3d at 1274. Extending this paradigm, it observed—

> Given this function of § 404(a)(6), we conclude that the requirement that grace-period contributions must be "on account of" the taxable year for which they are deducted is simply a demand that the payment fit the fiction. A grace-period payment "on account of" the prior taxable year must, for the purpose of calculating compliance with maximum deduction limits, be treated as though it had been made on the last day of that year.

Id. at 1274. The court further reasoned that, under section 413(b)(7) of the Code, the calculation of the maximum deduction limits for a multiemployer plan employed an "anticipatory, agglomerative approach" which required the plan coordinator to make an estimate based on the " 'manner in which actual employer contributions for such plan year are determined.' " *Id.* at 1274–75 (quoting § 413(b)(7)). If contributions attributable to more than 12 months of service could be assigned to any year the employer chose, the Tenth Circuit found, it would be impossible for plan administrators to make a meaningful determination of "anticipated" contributions, thereby making Section 413(b)(7) unadministrable.[13] As such, the court opined that American's "argument flies in the face of the entire purpose for [the] grace period," that is, to facilitate the calculation of deductible contributions. *Id.* at 1277. Rather, "Congress enacted § 404(a)(6) because the predicate facts required for § 404(a) calculations are sometimes known only at the very end of the taxable year," with the grace period then being "simply for making these calculations based on facts existing at the close of the taxable year." *Id.* at 1277. Finding that American sought instead to deduct amounts "based on predicate facts (i.e., hours worked during particular post-taxable year months) which did not exist at the end of the taxable year," the court, accordingly, concluded that the excess contributions were not deductible. *Id.*[14]

**13.** Burnishing this point, the court stated:

Because § 413(b)(7) requires plans to calculate planwide compliance with maximum deduction limits in advance, employers' contributions are effectively restricted to those limits only if a plan and its contributing employers use a common method for attributing payments to specific plan years and taxable years, respectively. The language of § 413(b)(7) implies such linkage. According to § 413(b)(7), once the plan determines that anticipated contributions "for [the] plan year" (calculated by the same method as actual employer contributions "for such plan year") are within the planwide limit, "the amount contributed ... by each employer ... for the portion of his taxable year which is included within such a plan year" also satisfy the deduction limits. The statutory scheme of § 413(b)(7) and § 404(a) is thus based on the assumption that an employer may deduct as contributions "for"

a particular taxable year only those payments anticipated by the plan "for" the corresponding plan year(s). Although plans do not track the timing of employer deductions, a monthly bill means employers are well aware of plan methods for calculating actual contributions, and, therefore, anticipated contributions.

*Id.* at 1275.

**14.** Plaintiff attacks the Ninth and Tenth Circuit's decisions by attempting to discount any notion that there is an "integral relationship" between section 404(a)(6) and 413(b)(7). To be sure, the former section originated long before the latter, which was not adopted until 1974. *See* Employee Retirement Income Security Act of 1974, § 1014, 88 Stat. 923. In many ways, though, this cuts against plaintiff for it reveals that Congress initially allowed the grace period to deal with single-employer plan calculations tightly tied to the amount of compensation earned by employees in a particular year. There is no

Clinging tenaciously to its view of the law, Vons unabashedly asks this court to cast aside these precedents on the strength of *Raybestos Manhattan, Inc. v. United States*, 220 Ct.Cl. 224, 597 F.2d 1379 (1979). In that case, according to plaintiff's brief, the Court of Claims "viewed 'on account of' to require only that a pension plan contribution be attributed to the prior year in some way, whether on the taxpayer's books or its tax return, so that taxpayers could not later change the year of deduction." In *Raybestos*, the company instituted a pension plan and agreed with the union to fund normal cost plus accruing interest on past service liability. During 1969 and 1970, the company made payments during the grace period in addition to the required amounts needed to meet its pension obligations. While those payments originally were attributed on the company's books to its tax years 1969 and 1970, the company later filed a refund claim asserting that the payments were deductible in 1968 and 1969, like Vons, invoking the provisions of section 404(a)(6). This court's predecessor rejected these deductions, concluding that the "on account of" language in the statute required "some proof that [the] taxpayer actually elected to make the payment it now claims as a deduction for the particular year." 597 F.2d at 1384. Finding no evidence of such an election, the court concluded that the company's payments were not "on account of" the prior taxable years.

That said, even a cursory review of this opinion reveals that in requiring an election, the *Raybestos* court made no pretense of outlining the sum total of section 404(a)(6), but merely identified a threshold requirement therein. That is to say, the court did not remotely suggest that had the company made such an election it would have been entitled to the deductions claimed. Indeed, contrariwise, the court indicated that it was not deciding "whether the two additional payments (made during the grace periods for 1968 and 1969) were for retirement contributions properly accruable in those years," emphasizing further that "[s]ince no evidence was presented here, we need not determine the quantum of evidence which would suffice to demonstrate payments were made 'on account of' a particular tax year," 597 F.2d at 1385 n. 8. Moreover, it made several observations about the pre–1974 version of the statute that fit snuggly within the *ratio dicendi* of the more recent cases rejecting plaintiff's position. For example, the court observed that the legislative history of section 404(a)(6) indicates that the statute was designed "to allow accrual method taxpayers to compute maximum deductions, which were calculated on a percentage of employee compensation paid during the year." 597 F.2d at 1382. Reflecting the impact of this legislative history, the court also noted that "[a]ll cases (of which we are aware) in which deductions of a grace period payment was permitted have rested on some proof that the taxpayer actually incurred or recognized the liability in the taxable year for which the deduction was sought," 597 F.2d at 1383, and quoted, with approval, from a law review article, which similarly indicated that "[t]he right to a grace period delay arises only if the employer was liable for the contribution as of the close of its taxable year," *ibid.* (quoting Beck, "Contributions to Qualified Plans: When, What and How Much?," 27 N.Y.U. Annual Inst. on Fed. Tax'n 187, 209 (1969)). Properly read, then, *Raybestos* hardly cuts in plaintiff's favor and certainly does not require the wholesale rejection of recent precedent on the issue *sub judice.*[15]

indication that Congress intended to change the fundamental nature or impact of section 404(a)(6) when it adopted multiemployer plan limitations that were less dependent on employee compensation. Indeed, quite to the contrary—as noted above, when, in the very same 1974 bill, Congress extended section 404(a)(6) to cash-basis taxpayers, it again referred to the provision only as allowing time to calculate the proper contribution for the prior year. *See* S Rep. No. 93–383, at 128 (1974), U.S.Code Cong. & Admin.News 1974, at 4890, 5011 ("This rule should provide the additional time necessary for the individuals involved to make the required calculations and determine the amount of the maximum deductible contributions which is permitted for the taxable year in question"); H.R.Rep. No. 93–807, at 100–01 (1974), U.S.Code Cong. & Admin.News 1974, at 4670, 4767–68 (same).

15. Further indication of this may be found in *Methodist Hospital of Indiana, Inc. v. United States*, 224 Ct.Cl. 449, 626 F.2d 823 (1980). In that decision, the Court of Claims construed a medicare reimbursement provision that had been patterned after section 404(a)(6). Noting this

Likewise impuissant is Vons' contention that the Ninth and Tenth Circuit's construction of the phrase "on account of" is a *non sequitur* because many single employer plans, and even some multiemployer plans, do not require contributions to be based on employees' services rendered in a particular year, but rather on indicators such as the firm's profitability or cash flow. As such, this argument runs, construing section 404(a)(6) to require deductible contributions during the grace period to be causally connected to the prior tax year would lead to various plans being treated differently. This is largely true, but entirely irrelevant. As found by the Tenth Circuit in rejecting the identical argument in *American Stores,* "[t]he collective bargaining agreements' payment schedules are relevant not because they caused obligations to be accrued during the taxable year, and not because 'on account of' always means 'on account of services rendered,'" but because section 413(b)(7) "makes them relevant by designating 'the manner in which actual employer contributions ... are determined' as the method for calculating compliance with deduction limits." 170 F.3d at 1276. Even more pointedly, that court commented—

> American argues that "Congress [i]ntended [s]ection 404(a)(6) to [a]pply to [a]ll plans," ... and that disallowing the deductions in question negates the application of § 404(a)(6) to contributions to multiemployer plans. Here American attacks a straw man of its own making. The Commissioner does not argue that Congress intended to exclude multiemployer contributions from § 404(a)(6) .... It is American's position that would treat multiemployer plans differently from other plans

and citing *Raybestos, supra,* the court stated that "[u]nder section 404(a)(6), an employer may deduct pension contributions *for the year liability is incurred,* as long as payment is made before the filing of the employer's tax return." 626 F.2d at 825 n. 5 (emphasis added).

**16.** The Tenth Circuit's observation that adoption of plaintiff's position would allow it virtually unlimited deductions for amounts paid during the grace period was, as noted above, conceded by plaintiff's counsel at oral argument. This concession is particularly noteworthy in that language similar to that in section 404(a)(6) is also

by automatically allowing virtually unlimited deductions to fit under [the] deduction limits.

*Id.* at 1277. Accordingly, while the impact of section 404(a)(6) varies from plan to plan, that result stems not from any inconsistency, but from the Code's application to the circumstances encountered. In the end, then, it is plaintiff, and not defendant, that seeks a special rule for its multiemployer plans— that, to be sure, is a *non sequitur.*[16]

Nor, contrary to Vons' demurrer, is the result here inconsistent with Rev. Rul. 76–28, *supra.* In that ruling, the IRS indicated a payment may be considered to be "on account of" the preceding taxable year if it "is treated by the plan in the same manner that the plan would treat a payment actually received on the last day of such preceding taxable year of the employer." Vons asserts that the "same treatment" reference in the ruling is limited only to how the plan calculates benefits. But, there is nothing in the ruling that suggests this language performs such a myopic role. Instead, as observed in other cases, the ruling instead requires that the plan, in all substantial regards, "must treat the payment as though it were made on the last day of that taxable year." *American Stores,* 170 F.3d at 1278. This includes not only the way the plan calculates benefits, but, for multiemployer plans, also includes such things as the calculation of contributing limitations under section 413(b)(7), and how the plan administrator "account[s] for contributions to ensure that employers keep pace with their obligations to the plans." *Lucky Stores,* 153 F.3d at 966; *see also American Stores,* 170 F.3d at 1278. Included within the latter category were provisions in the CBAs here that calibrated the amount of

employed in the following Code sections: § 192(c)(3) (contributions to black lung benefit trusts); § 219(f)(3) (contributions to individual retirement plans); § 468A(g) (payment of nuclear decommissioning costs) and § 530(b)(5) (contributions to Coverdell educational savings accounts). Adoption of plaintiff's argument thus would seemingly open a Pandora's box as to each of the contribution limitations associated with these provisions. *Cf. Harris v. Comm'r,* 51 T.C.M. (CCH) 1154, 1986 WL 21940 (1986) (indicating that section 219(f)(3) of the Code does not authorize deductions for IRA contributions in excess of the annual cap).

contributions owed to the hours or weeks of employee service that were rendered in a given month and which treated particular remittances as fulfilling those obligations, both for internal tracking and external regulatory purposes. And on those counts, there is no question that the payments at issue certainly did not receive the same treatment as payments properly attributable to the prior taxable year.

This conclusion renders Vons' well-rehearsed assertion that it is entitled to rely on the "plain meaning" of this revenue ruling a red herring. Indeed, even if the court indulges the notion that the ruling could be construed as supporting plaintiff's position, several additional reasons warrant rejection of what amounts to a thinly-veiled estoppel argument. First, as noted by the Tenth Circuit, the revenue ruling is "hardly pellucid," and, therefore, is not subject to a single interpretation. Thus, this is not a case such as *Estate of McLendon v. Comm'r*, 135 F.3d 1017, 1023 (5th Cir.1998), where the court held that the IRS was bound by a ruling that had a "clear standard" that "undeniabl[y]" supported the taxpayer's position. *See American Stores*, 170 F.3d at 1278; *Vons Cos., Inc. v. United States*, 51 Fed.Cl. 1, 7 n. 4 (2001), *modified*, 2001 WL 1555306 (Fed.Cl. Nov.30, 2001). Rather, plaintiff seeks to lock the IRS into a particular *interpretation* of a ruling and even those cases affording revenue rulings the most precedential value do not remotely go that far. *See American Stores*, 170 F.3d at 1278 ("the very fact that American argues for reliance on a 'reasonable' interpretation of the Revenue Ruling demonstrates the weakness of its position").[17] Second, even if this ruling supported Vons' position, it would not be controlling to the extent contrary to the statute and the expressed intent of Congress. *See Schleier*, 515 U.S. at 336, 115 S.Ct. 2159; *Vons*, 51

Fed.Cl. at 6–7 (citing cases); *see also Western Co. of North America v. United States*, 323 F.3d 1024, 1034 (Fed.Cir.2003). And the short of it is that Vons' position is at war not only with the cases outlined above, but also with the underlying meaning and legislative history of the statutory text in question.

A few final words of elaboration are in order. Plaintiff's real jeremiad is that the IRS once agreed with its interpretation of the subject revenue ruling, but now does not. This assertion leads nowhere. For one thing, plaintiff makes this claim relying almost exclusively on documents (*e.g.*, private letter rulings, technical advice memoranda, general counsel memoranda and the like) that the Code and the case law indicate are neither precedential nor binding, *see Vons*, 51 Fed.Cl. at 8–11 (citing numerous cases).[18] The truth of the matter is that the IRS "positions" to which Vons refers were never intended to be relied upon by any taxpayers except those to which the rulings were directed. For another thing, it is axiomatic that the IRS simply is not estopped from changing its views of the law, even retroactively and even if a taxpayer has relied to its detriment on the earlier position. *See Dixon v. United States*, 381 U.S. 68, 72–73, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965); *Vons*, 51 Fed. Cl. at 6 (citing numerous cases). As such, nothing prevented the IRS from "changing" its position, provided that its "new" view is supported by the statute—and it is. Finally, to be sure, there is a recognized exception to the foregoing rules, established in *Int'l Bus. Mach. v. United States*, 170 Ct.Cl. 357, 343 F.2d 914, 924 (1965), *cert. denied*, 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966), which precludes the IRS from issuing private letter rulings that treat competing taxpayers differently. But that concept is plainly inapplicable here as no such disparate treatment

---

17. Moreover, contrary to plaintiff's claim, there is no requirement in the Code, the regulations or decisional law that requires the IRS to revoke a revenue ruling simply because it has changed its interpretation thereof.

18. Indeed, it bears mentioning that in arguing that the "factual record" here is different from that in *Lucky Stores* and *American Stores*, Vons primarily relies on three affidavits—one by its counsel and two by other supposed legal ex-

perts—that, for the most part, merely restate, in the guise of providing "facts," plaintiff's view of the various private letter rulings, technical advice memoranda, general counsel memoranda that it discusses in its brief. This information becomes neither more relevant, precedential nor compelling simply because it is regurgitated and recharacterized as "factual background" in self-serving affidavits.

between competitors has been alleged, let alone shown—indeed, Vons never sought a private ruling for itself as to this issue. *See Schlumberger Tech. Corp. v. United States,* 55 Fed.Cl. 203, 222–23 (2003); *see also Vons,* 51 Fed.Cl. at 10.[19]

### III. CONCLUSION

The court will not paint the lily. Plaintiff has choreographed an intricate pavane based on the complexity of the pension laws and various nonprecedential constructions thereof but ultimately stumbles over a plain construction of section 404(a)(6) that is dictated by the statute's language, context and legislative history—a construction that avails plaintiff naught. Despite plaintiffs' importunings, nothing precludes this court from applying that construction or the Commissioner, for that matter, "from collecting the

tax lawfully due under the statute." *Dixon,* 381 U.S. at 74–75, 85 S.Ct. 1301; *see also Vons,* 51 Fed.Cl. at 7. Accordingly, consistent with the view of every court to have considered this issue, this court also finds that plaintiff is not entitled to the deductions claimed. Defendant's motion for summary judgment is **GRANTED**; plaintiff's cross-motion for summary judgment is **DENIED**. The Clerk is directed to dismiss plaintiff's complaint.

**IT IS SO ORDERED.**

---

19. On brief, Vons reasserts various other points regarding revenue rulings, private letter rulings, technical advice memoranda and other IRS administrative materials that were made and squarely rejected by this court in its earlier discovery opinion in this case. On these counts, the court sees no basis upon which either to depart from its earlier ruling or to repeat itself.